(No. 21268.—

George S. Forbes, Appellee, *vs.* G. W. Hubbard *et al.*
Appellants.

*Opinion filed April 23, 1932.*

CAVENDER, MILCHRIST & KAISER, and BRYANT, ROBERTS, HWASS & LEWE, for appellants.

TENNEY, HARDING, SHERMAN & ROGERS, and FRANK T. MURRAY, (S. ASHLEY GUTHRIE, and WILLIAM W. MILLER, of counsel,) for appellee.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

Appellee filed a petition in the circuit court of Cook county seeking *mandamus* against certain officials of the village of River Forest to compel them to issue to him a permit for the construction of a two-story brick and terra cotta store building upon real estate owned by him in that village. It is conceded that the proposed plans and specifications strictly comply with the requirements of building ordinances of the village, but the defense was made that to use appellee's premises for commercial or business pur-

poses was in violation of the zoning ordinance of the village. The village officers on that ground refused to issue a building permit. The cause was heard by the court, and the peremptory writ of *mandamus* was issued as prayed in the petition, the court holding that the zoning ordinance as applied to appellee's property was an unreasonable invasion of it and therefore void. The cause comes here on certificate of the trial judge that the validity of an ordinance is involved and that public interest requires that the same be passed upon by this court.

Appellants seek reversal of the judgment order on the ground that it is contrary to law and the evidence and for errors in the rulings of the chancellor as to the admissibility of certain evidence.

On April 3, 1922, the village passed a comprehensive zoning ordinance, creating thereby four different use districts: "A" restricted to single-family dwellings; "B" restricted to apartment buildings and those permitted in "A" district; "C" restricted to stores or commercial buildings and those permitted in the "A" and "B;" and "CC," industrial or unlimited use district. Appellee's property is included by the zoning ordinance in the "A use" district. The ground of appellee's petition is, that in so far as the ordinance purports to prevent the proposed structure on his property it is arbitrary, unreasonable and void.

River Forest is a village of approximately 9000 inhabitants. It is a suburb of Chicago, located about ten miles west of the loop district. Immediately adjoining River Forest on the east, between it and the city of Chicago, is the village of Oak Park, with a population of approximately 63,000. Harlem avenue extends north and south along the boundary line between the villages of River Forest and Oak Park. It is a through street, extending throughout the boundaries of these villages and for many miles north and south thereof, forming a part of one of the principal highways of Cook county. Appellee's property is located

in the southwest corner of the intersection of Harlem avenue with Chicago avenue, likewise a through street, extending from the city of Chicago west and joining with highways extending west through the county. A branch of the Chicago and Northwestern railroad extends east and west through the village along Central avenue, which lies one-half mile south of Chicago avenue. Its tracks are elevated but have no passageway under them for a distance of approximately one-half mile west of Harlem avenue. A railroad known as the "Soo Line" extends north and south through the village something over a half mile west of Harlem avenue. Lake street is an east and west street paralleling Central avenue one block north thereof and is somewhat less than a half mile south of Chicago avenue. The zoning ordinance places all property between Lake street on the south, Chicago avenue on the north, Harlem avenue on the east and the village limits on the west, with the exception of public property and a few lots fronting on Lake street, in the "A use" or single-family residence district. About the year 1905 the property included in these boundaries, then mostly vacant, was purchased for subdivision purposes, and in 1922, at the time of the passage of the zoning ordinance, all of this real estate had been sold with the exception of 792 feet fronting on Harlem avenue. The deeds issued by the original subdividers as to all lots in the subdivision, except those fronting on Harlem avenue, contained a restriction limiting the use of such lots to a single-family residence. Those fronting on Harlem avenue were sold without restriction. That portion of the village of River Forest lying north of Chicago avenue and west of Harlem avenue was for most part zoned for single-family use. The roadway of Harlem avenue where it passes between the two villages is 38 feet in width and is now paved with brick. Proceedings to widen the roadway to 50 feet and to re-surface it with heavy reinforced concrete ten inches in thickness have been authorized by both villages.

A double-track street car line extends on Harlem avenue from beyond the southern limits of River Forest north to Chicago avenue, where it turns east, connecting with the Chicago traction system at Austin avenue, one and one-half miles east of Harlem avenue. Cars pass over it at intervals of from seven to ten minutes, and busses are likewise operated on Harlem avenue at twenty minute intervals. Appellee's property abuts on Harlem avenue with a frontage of 100 feet and has a depth along the south side of Chicago avenue of 183 feet. The property is vacant. There are at this intersection automatic electric traffic signals. The other three corners of Harlem and Chicago avenues are occupied by business buildings. On the northwest corner is a real estate office, conducted in a bungalow. This property was being so used when the zoning ordinance was passed and is devoted to a non-conforming use. On the northeast corner there is a two-story terra cotta store and business building fronting 100 feet on Chicago avenue, with a depth of 150 feet north on Harlem avenue and containing nine store-rooms. Other business buildings extend east on both sides of Chicago avenue for more than a block. On the southeast corner a gasoline filling station and greasing place occupies approximately 100 feet on Harlem avenue. In 1921 the village of Oak Park by a zoning ordinance zoned this property for commercial use and the property south for three blocks for apartment buildings. By amendments to this ordinance in 1927 and 1929 the entire frontage on the east side of Harlem avenue from a point 150 feet north of Chicago avenue south to Lake street, a distance of nearly a half mile, was zoned for commercial use. In the neighborhood of Lake street, on Harlem avenue, in Oak Park, a large department store has been erected. North of this are apartment buildings and a number of old, low-grade frame residences, some of which have been converted into business uses. On the west side of Harlem avenue, at its intersection with Lake street and for a distance of approximately two

blocks north, is a tract of ground belonging to the Forest Preserve District. There is an administration building on this tract. From this tract north to Chicago avenue the property fronting on Harlem avenue is vacant, with the exception of one lot at the corner of Quick avenue and Harlem avenue, across from the preserve district property, which contains a single-family residence facing on Quick avenue. North of Chicago avenue, on the west side of Harlem avenue, are a number of single-family residences. The first street west of Harlem avenue, and parallel thereto, is Bonnie Brae. This street from Lake street to Chicago avenue, and for some blocks north thereof, is built up with single-family residences. The lots on the east side thereof and immediately opposite the property of appellee are of a depth of 183 feet and adjoin the west line of the property fronting on Harlem avenue. There is no alley between Bonnie Brae and Harlem avenue. The residences built on the east side of Bonnie Brae are on a building line about 100 feet from their rear lot line. The rear of these lots is occupied by private garages and a line of trees and shrubs. The original subdividers sold the premises here involved in 1918 for $6000, or $60 per front foot. In October, 1922, appellee purchased all of the vacant property fronting on Harlem avenue, with the exception of the lot involved here, at $50 per front foot. In 1925 he purchased the lot involved for $35,000, or $350 per front foot.

There is little, if any, controversy as to the facts. It is conceded that the highest and best use of the property here involved is for commercial or business purposes. The evidence shows it worth from $350 to $500 per front foot for business purposes and from $40 to $50 per front foot for single-residence purposes. Harland Bartholomew, professor of civic designing at the University of Illinois, who qualified as an expert of wide experience in matters of zoning and preparation of zoning ordinances, described the method of his investigation of the zoning ordinance of

River Forest and its application to the property of that village. He testified that the classification of the locus in question as "A use" property is not a reasonable and proper classification, giving as his reason for that opinion the character of Harlem and Chicago avenues as main traffic thoroughfares, the use of three of the four corners for commercial purposes and the presence of street cars and bus lines in front of the premises. Over objection he was permitted to state that in this case, as in all cases, he also gave substantial weight to the use and occupancy of the property across the street in the village of Oak Park, for the reason that in all cases the opposite sides of streets bear very close relationship to each other, property on one side of a street being always influenced to a marked degree by the character of use of property on the other side. It was his opinion that the development of the property involved here for commercial purposes could have no serious influence on the residence property to the west, but that if it were not so developed it might degenerate into a condition which would be more detrimental to the property west than would naturally come from a commercial development at that point, for the reason that if kept in a single-family residence district, the property, under the conditions there obtaining, would ultimately be built up with unsatisfactory residences. He testified that he found from a survey of the village and the zoning plans that there had been zoned for commercial purposes in the village a frontage of 12,767 feet, of which 2438 feet had been so used, and that in considering the quantity of commercial property in the district and the effect of that quantity on proper zoning, a great deal of consideration must be given to the distribution of such property.

Jacob L. Crane, Jr., also qualified as a zoning expert of wide experience and testified that the zoning ordinance applied to the locus involved is not logical or proper zoning of the property but is unreasonable and unsound. He gave

as a reason for this opinion the condition of the traffic on the streets on which the property abuts, stating that in his judgment the heavy condition of traffic is emphasized by the replacement of the roadway with a wider and heavier pavement. He also referred as further reasons for his opinion to the conditions described by the witness Bartholomew. He referred to the low-grade residence buildings on the east side of Harlem avenue as indicative of the probable destiny of appellee's property if confined to single-family residences. He stated that in his opinion appellee's lot and those on the east side of Bonnie Brae, opposite, are in altogether different situations as to character and reasonable use; that while the lots on Bonnie Brae would suffer to some degree by building upon this lot, now vacant, such hazard of damage is not materially, if any, greater than that resulting from the use of the Harlem avenue frontage for single-family residences, since under the limitations of the zoning ordinance that property is likely to be improved only for "tax-paying" purposes and not in keeping with the residential portion of River Forest, and that these considerations show that it is not to the interest of the residential portions of the village at large to restrict the locus involved to single-family residences. He pointed out that if this property were re-zoned for commercial uses the village in the neighborhood of that property would have additional business facilities within an easier reach, to which the people and their children might go to shop without having to cross Harlem avenue. He also stated that the plan of the zoning ordinance in its allocation of areas for business uses does not appropriately distribute or space the business districts.

Five other witnesses who qualified by years of experience in handling real estate, one of whom had served as member of the zoning commission of Oak Park, testified that commercial use of the locus in question would not result in any substantial injury to residence property to the west, but

would, in fact, be less hazardous to that property than would be the construction on Harlem avenue of single-family residences of the only type reasonably to be expected in such surroundings. They also testified that the proper zoning of the locus involved is for commercial purposes, the same as that across the street.

In defense, appellants offered proof of the length of time consumed in preparing the zoning ordinance, the fact that appellee had in 1923 petitioned for a re-zoning of his property, which was denied, and certain testimony and exhibits showing the uses of the property of the village, none of which disputes or contradicts the evidence of appellee. There was also introduced by appellants a table showing a survey of a number of cities and villages in the vicinity of Chicago as to the number of feet frontage actually used for business in those cities and villages, and an exhibit showing the acreage of the village, its public and church grounds and the boundaries of the various districts as zoned by the ordinance. The record contains no evidence disputing that of appellee concerning the highest or best use of the property involved or the opinions of the witnesses offered as experts. It is conceded that the ordinance is a serious invasion of appellee's property. Counsel for appellants argue that this suit is but an attempt on the part of appellee to destroy the zoning ordinance of the village for his personal benefit; that he purchased the property after the zoning ordinance was passed and is gambling on the possibility of making a large profit on it if the zoning ordinance can be destroyed. The evidence shows that appellee paid $350 per front foot for this property, which is seven times the highest value placed on the lot as residence property.

The public welfare is a dominating consideration in cases of this character. Where it appears that the restrictions of a zoning ordinance bear substantial relation to the public health, safety, morals or general welfare, such a consideration is determinative regardless of the fact that in-

dividuals may suffer an invasion of their property. This has been often recognized by this and other courts and the rule need not be laid again here. (*Binder* v. *Hejhal*, 347 Ill. 11; *Michigan-Lake Building Corp.* v. *Hamilton*, 340 id. 284; *Phipps* v. *City of Chicago*, 339 id. 315; *Minkus* v. *Pond*, 326 id. 467; *Village of Western Springs* v. *Bernhagen*, 326 id. 100; *Western Theological Seminary* v. *City of Evanston*, 325 id. 511; *Deynzer* v. *City of Evanston*, 319 id. 226; *City of Aurora* v. *Burns*, 319 id. 84; *Nectow* v. *Cambridge*, 277 U. S. 189; *Zahn* v. *Board of Public Works*, 274 id. 325; *Village of Euclid* v. *Ambler Realty Co.* 272 id. 365.) But it must also be remembered that such restrictions violate the right of the property owner to use his property as he may choose and must be based upon such consideration. Whether appellee loses or gains by the outcome of this lawsuit is a matter about which we can have no concern. No moral turpitude, as seems to be urged by counsel for appellants, is perceived, however, in appellee's taking upon himself, by his purchase and suit, the burden and claim of removing what he alleges to be an illegal restriction. Motives of self-interest are most common in lawsuits, but such motives have never been, and cannot be, held to be a sufficient reason for withholding relief to which parties show themselves entitled. It is conceded that the invasion of appellee's property is serious and highly injurious. If such invasion bears a substantial relation to the public good, he must, as this court has many times said, bear the burden. If, however, that restriction lacks the necessary basis of public good it comes within the constitutional inhibition against taking private property for public use without compensation.

Counsel for appellants argue that as appellee purchased this property after the passage of the zoning ordinance he should not now be heard to complain that that ordinance is invalid. We know of no rule of law that creates an estoppel against attack by such purchaser on the validity of a zoning ordinance unless there be in his acts or the acts

of his grantor that which of themselves would estop him. In *Western Theological Seminary* v. *City of Evanston, supra, Phipps* v. *City of Chicago, supra,* and *Michigan-Lake Building Corp.* v. *Hamilton, supra,* it was held that the purchaser of land has a right to rely upon the classification which existed as to that land at the time the purchase was made and upon the rule of law that its classification would not be changed so long as the basis of public welfare remained the same. This is far from holding that the fact that one purchases property which is under a restriction believed to be invalid may be set up as an estoppel against his attempt to remove such restriction. In *Continental Oil Co.* v. *City of Twin Falls,* 286 Pac. (Ida.) 353, where this question was raised, the court held that the purchaser of property after the passage of a zoning ordinance stands in the place of his grantor, and where the grantor had a right to test the validity of the ordinance such right exists in his grantee. It is likewise thoroughly established that mere acquiescence, regardless of the period thereof, cannot legalize a clear usurpation of power which offends against the constitution adopted by the people. *Hamann* v. *Heekin,* 88 Ohio, 207, 102 N. E. 730; *Terrell* v. *Middleton,* 87 S. W. (Tex. Civil App.) 367; *Pingree* v. *Auditor General,* 120 Mich. 95, 78 N. W. 1025, 6 R. C. L. 62.

It is also argued that it was error to admit evidence of the zoning ordinance of Oak Park and of the uses to which the property on the east side of Harlem avenue is put. In support of this contention it is said that River Forest is a separate municipality, and should have power, subject to the organic law of the State, to regulate its own affairs, and should not be required to re-zone real estate located within its borders simply because the zoning of real estate on the opposite side of the street, in another municipality, did not conform to the original zoning of the village of River Forest. It was, as we have seen, the opinion of the expert witnesses of appellee that property cannot be disassociated

from that directly across the street. It is, of course, true that the village of River Forest is independent of its surroundings so far as its governmental functions are concerned, but, as is conceded, the power to restrict the use of property by a zoning ordinance is an invasion of a property right and can be supported only on the ground of public welfare, and in applying the test whether such ordinance is based on the public good, the considerations are not the comparative powers of neighboring villages but conditions as they exist. These vary so widely that facts in the adjudicated cases substantially the same as those under consideration are not frequently found. It is the general rule in zoning territory of the character before us, to fix the dividing lines of districts in such a way as to avoid making one side of a main artery of travel purely residential where the opposite side is already so used as business property as to establish its character in that regard. To so zone property will almost inevitably lead to such destruction of values as to be confiscatory. (*White's Appeal*, 287 Pa. 259, 134 Atl. 409.) In *Taylor* v. *Haverford Township*, 299 Pa. 402, 149 Atl. 639, the property in suit was zoned for single-family residences, as was that to the southeast, east and north of it, while that across Darby road, a main thoroughfare, was given over to commercial uses. The effect of zoning that property for single-residence purposes while that across a main thoroughfare is used for commercial purposes, under the conditions there existing, was discussed, and such zoning was held to be clearly unreasonable and confiscatory. In that case it was also held that the inclusion of the lot there involved in a residential district was not essential to the general plan but it could with perfect feasibility be excluded therefrom.

It is clear from the undisputed evidence in this case that appellee's property is not characterized by the residence area lying west of it but rather by the business district which it faces. This not only clearly appears from the un-

disputed testimony of all of appellee's witnesses but from the physical facts and the history of this property. While all other lots in the subdivision of which appellee's property forms a part were sold by the subdividers under a restriction to single-family residences, the property abutting on Harlem avenue, including appellee's lot, was deeded without any restriction. Also, an examination of the plat discloses that the territory bounded by Chicago avenue on the north, Harlem avenue on the east, Lake street on the south and the village limits on the west, comprising more than thirty blocks, is almost completely built up with single-family residences, there being an average of but little over one vacant lot to the block, while but one residence is built on Harlem avenue between Lake street and Chicago avenue, and that house faces on Quick avenue at its junction with Harlem avenue and just across from the forest preserve. These facts argue strongly against the classification of Harlem avenue as single-family residence property, and tend strongly to establish that the character of the property across the street on this main thoroughfare has, whether desired by the people of the village of River Forest or not, a deciding influence on the characterization of appellee's property. In *Dowsey* v. *Village of Kensington*, 257 N. Y. 221, 177 N. E. 427, this question arose. The village of Kensington lies contiguous to the city of New York, separated therefrom by a north and south street known as Middle Neck road. The village adopted a zoning ordinance embodying the entire village in single-family use district, excepting schools and other public property. The village is so platted that there is but one entrance into it and that from Middle Neck road. Once inside the village the streets lead into various parts. The question was whether a tract of land lying along the east side of Middle Neck road and south of the entrance street but within the village, and zoned for single-family residences, was by such classification subjected to an unreasonable invasion. On the west side of Middle Neck road

property was zoned for commercial purposes. In holding the village zoning ordinance to be unreasonable, arbitrary and void as to the property on Middle Neck road the court recognized that it was doubtless the desire of all persons living within this village to keep the entire village under complete restriction to single-family residence use but stressed the fact that the property on the west side of Middle Neck road, opposite the village, is used for apartments or business, and the opinion of the court is based largely on the influence of such use on the character of the property there involved. We think that in determining the question of the reasonableness of an ordinance it is impossible to do so without considering the character of the property across the street. It was not error to receive this evidence.

Counsel for appellants argue that whether the restriction of appellee's property to single-residence use is arbitrary and unreasonable is at least a fairly debatable question, and under those circumstances the court will not disturb the judgment of the village board, exercised after consideration. As has been more than once announced by this and other courts, the judgment of the legislative department will not be disturbed merely because the court, if it were establishing zoning districts, would not have established them as was done by the city council or village board. The rule is, that where the question of reasonableness is fairly debatable, courts will not interfere with the legislative judgment; (*Michigan-Lake Building Corp.* v. *Hamilton, supra; Zahn* v. *Board of Public Works, supra;*) but it has likewise been many times held that the governmental power to interfere by zoning regulations with the general rights of property owners by restricting the character of the use of their property is not unlimited, and such restrictions cannot be imposed if they do not bear substantial relation to the public health, safety, morals or general welfare. (*City of North Muskegon* v. *Miller,* 249 Mich. 52, 227 N. W. 743; *Nectow* v. *Cambridge, supra; Bjork* v. *Safford,* 333 Ill. 355; *City*

of *Aurora* v. *Burns, supra; Village of Euclid* v. *Ambler Realty Co. supra; Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393.) Individual rights in the ownership of property were not created by the constitution but existed before its adoption and are guaranteed by it. The declaration that private property shall not be taken for public use without just compensation or without due process of law is subordinated to the interest of the public welfare as expressed through the exercise of the police power of the State, but only where, and to the extent only that, such exercise of police power bears substantial relation to the promotion of the public health, safety, morals or general welfare. The fact that substantial study has been given to the problems of such an ordinance before its passage is a matter for consideration in determining the reasonableness of the ordinance. It may be further observed that ordinances duly enacted lie behind the bulwark of presumptive validity and the burden is upon one assailing them to reduce that shelter, but neither the study and investigation of zoning commissions nor the presumptive validity of the ordinance is controlling in the test whether the ordinance is a reasonable exercise of the police power. That matter is to be decided by the court from all the facts and circumstances shown. While the opinions of experts or of laymen that a certain restriction which has found its way into an ordinance governing the use of property is in the interest of the public good, if fairly debatable, will not be disturbed by the courts, yet they are not final, but such restriction must face the test whether such restriction is, in fact, in the interest of the public welfare. In thus considering that question each case is to be determined on its own facts and surrounding circumstances.

In deciding whether the invasion of property rights under a purported police power is unreasonable and confiscatory, the degree in which the values incident to the property are diminished by the provisions of the zoning ordi-

nance must always be considered. Such is to be determined from the facts of the particular case. (*Pennsylvania Coal Co.* v. *Mahon, supra; Village of Euclid* v. *Ambler Realty Co. supra; People* v. *Village of Oak Park*, 331 Ill. 406.) In this case the destruction of value in the premises involved is very great, its value for commercial purposes being seven times that for single-family residence use. The test to be applied is whether such destruction of value promotes the public health, safety, morals or general welfare. It is generally recognized that æsthetic considerations, while not wholly without weight, do not of themselves afford sufficient basis for the invasion of property rights, and this for the more or less obvious reason that while public health, safety and morals, which make for public welfare, submit to reasonable definition and delimitation, the realm of the æsthetic varies with the wide variation of tastes and culture. So, while it has been held that all uses of property or courses of conduct which are injurious to the health, comfort, safety, morals and welfare of society may be prohibited under the sovereign power of the State, though the exercise of such power result in inconvenience or loss to individuals, that power must find basis in the doctrine of overruling necessity or bear substantial relation to the public good and may not be based alone on æsthetic considerations. *People* v. *Kane*, 288 Ill. 235; *Town of Cortland* v. *Larson*, 273 id. 602; *Haskell* v. *Howard*, 269 id. 550; *Haller Sign Works* v. *Training School*, 249 id. 436; *Dowsey* v. *Village of Kensington, supra; Welch* v. *Swasey*, 193 Mass. 374, 79 N. E. 745.

Counsel for appellants also argue that in this case there is no necessity for these premises as business property since a sufficient amount of space has been allotted to that use by the zoning plan. The only evidence offered by appellants in support of this argument is a statement of the amount of space so used by surrounding cities and villages. No evidence of the sufficiency or distribution of such space

appears. Certain of appellee's witnesses testified, in substance, that in their opinion the distribution of the space allotted by the zoning plan to commercial uses was such that natural development of those uses could not be expected to take place on the property so allotted.

Counsel argue that the fact that 15,000 feet of frontage have been allotted by the ordinance for business uses, of which but about 2400 feet have been so used, indicates that there is ample room for business development in the village without the use of appellee's property for that purpose. We think, however, that the undisputed evidence of appellee's witnesses referred to, coupled with the undisputed fact that there is a demand for the locus involved for commercial uses at a value of $350 to $500 per front foot, most strongly indicates that the failure to occupy for business use the property zoned to such use finds its reason rather in the want of proper distribution than in the lack of need for space.

Counsel further argue that unreasonable damage to property on Bonnie Brae will occur by reason of the use of appellee's property for commercial rather than single-family residence purposes. The record does not so indicate. It was the opinion of all witnesses testifying on that subject that while the Bonnie Brae property now has the benefit of vista over this property as vacant property, which would be lost by building upon it, and while the building of a store building might thus to some extent affect values on the east side of Bonnie Brae back of this property, yet by reason of the depth of both lots and the physical condition of trees and shrubbery the injury would be but slight, if any, and that in the opinion of these witnesses, as we have seen, restriction to single-family residence would in all probability prevent the development of this property into a desirable home district, but it would be more apt to degenerate into what the witnesses characterized as "taxpaying" properties, and that such injury to the property on

Bonnie Brae would be very little, if any, less than the building of a store building of the character called for by the plans of appellee. This is the condition of the record, and we think the testimony of appellee's witnesses finds ample support in the physical facts and history as shown in the record.

We are of the opinion that the invasion of the property of appellee involved here is clearly unreasonable, unnecessary to the public good of the village of River Forest and amounts to the taking of property against constitutional inhibitions. The circuit court was therefore right in ordering the *mandamus* to issue, and its judgment will be affirmed.

*Judgment affirmed.*