(No. 29376.—)

2700 IRVING PÀRK BLDG. CORP., Appellee, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed November 20, 1946.*

BARNET HODES, Corporation Counsel, (J. HERZL SEGAL, F. PATRICK CONLON, and HERMAN SMITH, of counsel,) all of Chicago, for appellant.

PERRY JOHN TEN HOOR, of Chicago, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This suit was brought by the 2700 Irving Park Bldg. Corp. against the City of Chicago, in the superior court of Cook county, seeking to have two ordinances, amending the 1923 zoning ordinance of the city, declared invalid. An injunction was asked restraining the city from enforcing the ordinances insofar as they purport to apply to the property owned by the plaintiff.

Plaintiff's property is located on the north side of West Irving Park boulevard at about the 2700 block in the northwest section of the city of Chicago. It fronts 210 feet on Irving Park boulevard and extends north 400 feet. It is a part of a larger tract of approximately 53 acres, extend-

ing north from Irving Park boulevard to West Montrose avenue, bounded on the east by the north branch of the Chicago river and on the west by North California avenue. Some years ago a partial dedication was made of a street bisecting this larger tract from east to west, being an extension of Berteau avenue. This street, however, has never been opened or improved. The larger tract is located in the 40th ward of the city of Chicago, the east boundary of the ward being the above-mentioned river. This property is in the southeastern portion of the 40th ward.

For some time prior to 1923, the north half of the 53-acre tract was occupied by the Bach Brick Company and the south half, which includes the land here involved, by the Lake View Brick Company. Both companies were engaged in the manufacture of brick. They excavated and operated extensive clay pits on the property from which they obtained clay used in making brick. The old worked-out clay pits were used by the city of Chicago as places in which rubbish was dumped from approximately 1924 to 1937. As a result these old pits have been refilled with rubbish until their present levels are slightly above the street grades. The brick companies ceased their manufacturing operations about 1938. The premises have not been used for manufacturing brick since that time.

In 1940, the Ace Fastener Corporation and The Triangle Tool & Manufacturing Company, which were operating in Chicago, outgrew their factory facilities and were compelled to locate new and larger quarters. The tract here involved appeared suitable. They organized the 2700 Irving Park Bldg. Corp. for the purpose of purchasing and developing the property for and on behalf of the other two corporations. The land was purchased by the building corporation, but, before the factory could be started, shortages in structural materials occurred which made the immediate erection of suitable buildings impossible.

Under the original zoning ordinance passed by the city of Chicago in 1923, four types of districts were created,

namely residence, apartments, commercial and manufacturing. The 53-acre tract was then occupied by the brick companies. This tract, except the north 125 feet and the south 125 feet, was zoned as a manufacturing district. A strip 125 feet wide across the north end, and a strip of equal width across the south end, were zoned as commercial districts. This zoning was in effect at the time the plaintiff purchased the premises in question. On December 3, 1942, however, the 1923 zoning ordinance was amended so as to rezone a strip 125 feet wide off the west side of the 53-acre tract and lying immediately along the east side of California avenue, as an apartment district. On July 14, 1943, another amendment to the 1923 ordinance was passed rezoning the entire 53-acre tract, including the property here involved, to apartment use. These ordinances amending the ordinance of 1923, are the ordinances here involved. By the last-mentioned amendment the plaintiff is prohibited from using the property for the purpose for which it was purchased, *i.e.*, the erection of a factory.

The foregoing facts are undisputed. The property across the river to the east of plaintiff's premises is used primarily for industrial purposes. The area on the west side of the river, and within a block of the 53-acre tract, is not entirely industrial but does contain many manufacturing and commercial establishments, including a paint manufacturer, printing machine manufacturer, dairy distributing station, insulation storage warehouse, several filling stations and garages, several laundries or dry cleaning establishments, a refrigerator assembly plant, curtain factory, engineering and machine works, and many vacant lots and old dwellings. There are two factories, the type of which does not appear, which were completed in this area within one year of the time when this cause was heard.

The burden of the complaint is, that the plaintiff purchased the property in question in reliance on the zoning ordinance of 1923; that the amendment of 1942, which

rezoned a part, and the amendment of 1943, which rezoned all of the 53-acre tract to apartment uses, are arbitrary and do not bear any reasonable relation to, or tend to promote or preserve, the public health, comfort, morals, safety or general welfare; that because the amendments of 1942 and 1943 are arbitrary, discriminatory and unreasonable, they are, therefore, invalid; that the amendments of 1942 and 1943, although invalid, constitute a cloud on plaintiff's title which depreciated the value of the premises, resulting in irreparable damages; and that plaintiff has no remedy except in a court of equity. By its answer, the city of Chicago denied that the amendments of 1942 and 1943 are arbitrary and invalid. Upon that issue the cause was tried.

On the hearing before the master the testimony of expert witnesses bearing upon the character of the property and the reasonableness of the rezoning ordinances was offered by both sides. On behalf of the plaintiff, Hyde W. Perce was one of the witnesses called. He qualified as an expert. It was shown that he had been engaged in the real-estate business as a broker and appraiser for fifty-four years; that he had built and sold apartment buildings and hotels throughout the city; that he had been an appraiser for the Chicago Real Estate Board and is chairman of its appraisal committee; that he served as manager of the real-estate department of the Hibernian Bank for several years; that he had done appraisal work for the Home Owners' Loan Corporation, and had appraised property for two United States government housing projects; that he had appraised industrial sites throughout the city, and within the past year had done considerable industrial appraisal work in the vicinity of the property involved in this case; and that he had been familiar with the property here involved since about 1925, when he appraised the 53-acre tract for the Board of Local Improvements.

Mark Levy, who also qualified as an expert, was called by the plaintiff. It was shown that he had been engaged

as a realtor and appraiser for thirty-eight years, during which time he had appraised all types of real estate representing a total in excess of $2,600,000,000 in value; that he had bought and sold property in excess of $100,000,000 in value; that he had appraised for numerous large industrial concerns, including the Commonwealth Edison Company, People's Gas Light & Coke Company, Chicago Rapid Transit Company, and others; that he had done considerable appraisal work for the city of Chicago, the United States Army, the War Department, the Comptroller of the Currency, the Treasury Department, and the National Public Housing Authority; that he had been chairman of various committees, and had held several offices, including that of president, of the Chicago Real Estate Board; that he had served on the valuation and zoning committees of the Chicago Real Estate Board; that he had been president of the Real Estate Market of Chicago, and of the Real Estate and Loan Division of the Chicago Association of Commerce; that he has been a member and officer of numerous State and national real-estate and appraisers' organizations; and that he had appraised land in the general vicinity of the property in question.

Both of these experts testified that the 53-acre tract was unsuitable for apartment buildings, both because of the use made of the surrounding property and because of the physical nature of the soil on the premises which, being filled in, would require extensive foundation work if apartment buildings were to be constructed; that the trend of development in the immediate neighborhood for some years past has been industrial, which trend is continuing; that, based upon those factors, and the fact that the property is readily accessible to a large population of laborers, it was their opinion that the highest and best use to which the property of the plaintiff can be put is industrial use; and that the property has depreciated in value as a direct

result of its being rezoned from industrial use to apartment use.

On behalf of the city, Elmer O. Dobroth and H. Evert Kincaid testified as experts. It was shown that Dobroth had been engaged in real estate and appraisal work in the 40th ward for more than 29 years; that he is a member of the Chicago Real Estate Board, the National Association of Real Estate Boards, and the Northwest Real Estate Board; that he had appraised several hundred properties for banks, real-estate boards and insurance companies; and that he had lived in the vicinity of the property here in question for 35 years, and is still doing business in that area. He testified that there was a great demand for residential and apartment areas in the 40th ward, and within the area of two blocks surrounding the 53-acre tract, and that in his opinion, based on his experience with commercial and industrial properties, the highest and best use for the particular property in question is for apartments. On cross-examination, Dobroth admitted that he had dealt in residential and commercial properties only and had never handled or sold industrial properties in that neighborhood. He also testified that in the last twenty years the trend on California avenue between Montrose and Irving Park (*i.e.*, on the west side of the 53-acre tract) and on the south side of Irving Park across from the building corporation's property, has been industrial, but he expressed the opinion that if the 53-acre tract were to be used for apartments and residences it would improve the neighborhood and be better for the 40th ward and the city of Chicago than to let it continue as industrial property. He attributed the trend since 1941 to the fact that materials were available for industrial construction but could not be secured for apartment or residential building. He admitted that the presence of industrial properties near the 53-acre tract would, to a certain extent, lessen its value as apartment property, but stated that if the entire 53-acre tract were

developed as a residential area, the industrial plants would become relatively inconspicuous. He was one of the leaders in the citizens' movement, to which reference is hereafter made, to have the property rezoned and to obtain a park in this area.

The city's other expert witness was H. Evert Kincaid. He testified that he was the executive director of the Chicago Plan Commission, and prior to that time was chief planning consultant to the Federal Housing Administration. His prior experience had been in San Antonio, Texas, where he had worked as planning director, and with a firm that rendered planning services to the city of San Antonio. He was engaged at the time, he testified, as director of the activities of the Plan Commission staff, in preparing a master plan for Chicago. In his activities he had become familiar with the 53-acre tract of which the plaintiff's property is a part, and had conceived a plan for the improvement of that area along with other property in the 40th Ward. While with the Federal Housing Authority he studied the specific property, in order to appraise its desirability for housing purposes. From that study he concluded that the area surrounding the 53-acre tract was a residential neighborhood. He subsequently made a study of the physical characteristics of the property involved in order to determine its suitability for a housing project. It was his opinion that the 53-acre tract should be used for housing. That opinion was based on the physical characteristics and the relationship of the property to the adjoining neighborhood, but not to the immediate adjacent property. From his study of the property he expressed the opinion that the tract would not be suitable for industrial purposes. ·

It may be said that the experts who testified on both sides were amply and equally qualified, as such. In addition to these witnesses who testified as experts, certain lay witnesses who favored the ordinances were called by the

city. The weight of the testimony of these witnesses, as well as that of Dobroth, was greatly weakened by the following facts shown in evidence:

Shortly after the plaintiff purchased the property in question, news of the transaction and the proposed plan to erect a factory on the property was circulated among residents of the 40th ward. A group of these residents who were hoping to see the 53-acre tract ultimately converted into a park and playground, and who felt that the erection of a factory would prevent them from achieving that goal, started some agitation to have the tract rezoned in order to prevent the plaintiff from carrying out its plans. The 1942 amendment, which rezoned the west 125 feet of the 53-acre tract to apartment use, was passed largely as the result of the efforts of this group through the then alderman of the 40th ward. This was conceived as a stopgap to prevent development of the property until the entire 53-acre tract could be converted into a park or playground. The passage of the 1942 ordinance was followed by continued activities of this group during the aldermanic campaign in the early part of 1943. These activities were highlighted in a meeting held on March 26, 1943. This meeting was attended by an aldermanic candidate, by the mayor and others. The discussion at the meeting centered about the desire of those present to have the 53-acre tract converted into a park. The mayor indicated his sympathy with the proposal. Subsequently the candidate who attended this meeting was elected alderman. His first action as alderman was to promote a stop order through the city council, directing the commissioner of buildings to withhold issuance of any permits for building construction in the area. This was followed by the amendment to the zoning ordinance approved July 14, 1943, which, as previously noted, rezoned the entire 53-acre tract to apartment use.

This evidence can only be considered as bearing on the weight to be given to the testimony of the witnesses who

were interested in sustaining the ordinances. It has no bearing on the question of their validity. The ordinances were passed by the city council under the purported authority conferred by statute. The courts cannot inquire into the factors or reasons which motivated the council in passing the ordinances. We can only determine whether the city council had authority to pass the ordinances and whether such ordinances have a reasonable relation to the public health, comfort, safety and welfare, or are unreasonable or arbitrary.

On the basis of the foregoing evidence, the master made and reported as a finding of fact, that the highest and best use to which the 53-acre tract, including the plaintiff's property, can be put, is manufacturing and industrial; that the 53-acre tract is not suitable for apartment or residential development because of the nature of the surrounding property and the soil conditions; that there is ample vacant property in the surrounding district available for apartment and residential purposes; that the rezoning of the 53-acre tract under the 1942 and 1943 amendments to the zoning ordinance was secured by the efforts of individuals and local pressure groups, who were primarily interested in seeing the area used for a park or playground purposes; and that the rezoning of the 125-foot strip on the west side of the tract by the 1942 amendment, and of the remainder of the tract by the 1943 amendment, bore no factual relationship to the actual manufacturing and industrial uses then enjoyed by the tract and by the property immediately surrounding the tract. The master concluded, as a matter of law, that the 1942 and 1943 amendments, as applied to the property of the plaintiff, were unreasonable and arbitrary and, therefore, void. He further found that the comprehensive amendment of 1942 was not invalid as a whole, as contended by plaintiff. The master recommended that a decree be entered adjudging the 1942 and 1943 amendments to the zoning ordinance of 1923, invalid, as applied to the plaintiff's property; that

said amendments are clouds on plaintiff's title which should be removed by the decree recommended. He further recommended that the city of Chicago, its officers, agents and employees be restrained from enforcing the provisions of the said amendments, insofar as they prohibit the use of plaintiff's property for manufacturing and industrial purposes. Both the plaintiff and the city filed objections to the master's report, which were overruled and ordered to stand as exceptions to the report. The superior court approved the master's report *in toto,* and entered a decree as recommended. The decree found both the 1942 and 1943 ordinances invalid insofar as the plaintiff's property was concerned; and removed them as clouds on plaintiff's title. The city was perpetually enjoined from enforcing the ordinances of 1942 and 1943 against the plaintiff's property. The costs were taxed against the city. From that decree the appeal was taken by the city and a cross appeal by the plaintiff.

It is the position of the city that the legislative judgment of the city council is conclusive unless shown to be clearly arbitrary or unreasonable; that in the instant case there is a legitimate difference of opinion as to the reasonableness of the 1942 and 1943 amendments to the zoning ordinance and, therefore, the finding of the legislative body should not be disturbed; and that the decree perpetually enjoining the city from enforcing the provisions of the 1942 and 1943 amendatory ordinances, insofar as they relate to plaintiff's property, is an unwarranted interference with the power of the city to regulate, limit the extension of, and eliminate nonconforming uses, granted by the Illinois zoning statute. By cross appeal, the plaintiff seeks to have declared invalid the entire ordinance of December 4, 1942, on the ground that it is a complete new ordinance, and not merely an amendment of the ordinance of 1923. It contends that in passing the 1942 ordinance the city did not comply with the statute relating to the

passage of new zoning ordinances, or amendments to such ordinances.

The right of every owner of property to use it in his own way and for his own purposes existed before the adoption of the constitution, and is guaranteed by that instrument. (*State Bank and Trust Co.* v. *Village of Wilmette,* 358 Ill. 311.) That privilege is, however, subject to the police power of the State, under which new burdens may be imposed upon property and new restrictions placed upon its use when the public welfare demands. (*Bjork* v. *Safford,* 333 Ill. 355.) The power of a city to adopt zoning laws is based upon the police power, and is subject to the limitations on that power; its exercise is valid only when it bears a reasonable relation to the public health, comfort, morals, safety and general welfare. (*Rothschild* v. *Hussey,* 364 Ill. 557; *Koos* v. *Saunders,* 349 Ill. 442; *Forbes* v. *Hubbard,* 348 Ill. 166.) The legislative determination as to what is a proper exercise of the police power is not conclusive. Whether the means employed have a real, substantial relation to the public health, comfort, morals, safety or welfare, or are unreasonable and arbitrary, is a question subject to review by the courts. *State Bank and Trust Co.* v. *Village of Wilmette,* 358 Ill. 311; *Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511.

The evidence in this case fails to show the necessary reasonable relation between the zoning of plaintiff's property for apartment purposes and the public health, comfort, safety, morals and welfare. Even the city's expert witness, Dobroth, testified that the trend of the immediate neighborhood surrounding the 53-acre tract has been industrial for the past twenty years. The argument that because the 40th ward can be generally characterized as residential, therefore, the vacant 53-acre tract should be zoned as residential property, is obviously without merit. To accept such an argument would require the court to ignore completely the nature of the property adjacent to that of the

plaintiff and to fix its potential best use, not by the use to which the adjacent property is devoted, but by the use being made of other property considerably removed from it.

There is no question here but that the rezoning of the 53-acre tract to apartment use was not brought about by a desire of any individual or group interested in' erecting residential structures on the tract. Ross, the former alderman, and other leaders in the movement for rezoning, testified that their ultimate aim was to see that the property be made into a park or playground, and that the building of factories or industrial buildings be prevented until that goal could be achieved. The only evidence that anyone had been interested in the property for residential purposes was the testimony of the witness Kincaid that while he was with the Federal Housing Administration a housing project for the 53-acre tract had received consideration, but had never been either approved or disapproved. The witness Ross testified that his purpose in promoting the 1942 amendment, rezoning the west 125 feet of the 53-acre tract to apartment use, was a temporary restriction of the use of the whole tract, with the idea that eventually the entire tract would be used for park purposes or, in his own words, "to build a wall around there, knowing that they could not build on the inside and it would be too damned expensive and I wanted a park there." Witness Gurman, who succeeded Ross, as alderman, expressed the same purpose; the extent to which he was willing to go in keeping factories out of the tract is indicated by the fact that he commenced a suit late in 1942 to temporarily prevent the plaintiff, among others, from making an industrial or manufacturing use of the property. This suit was discontinued as soon as the 1943 amendment was passed.

As already observed it would be improper for this court to consider the motives of the city council in enacting the ordinances of 1942 and 1943. It is, however, pertinent to observe that those promoting those amendments were mo-

tivated by a desire to prevent the use of the property for manufacturing purposes until such time as their dream of a playground or a park could become a reality. Those interested in this movement included one of the city's expert witnesses, Dobroth. These parties were not concerned with having the 53-acre tract devoted to its highest and best private use; rather, their desire was to keep it from being used at all until such time as it could be converted into a playground or a park. These facts are proper to be considered in weighing the testimony.

In view of the foregoing facts, it is our opinion that there is no reasonable connection between the rezoning of the plaintiff's property. from industrial to apartment use and the public health, safety, comfort, morals and general welfare. If the highest and best use of the 53-acre tract is for park purposes, and park and playground developments are what is indicated in the interest of the public welfare, the rezoning to apartment use will not promote that end, as the erection of apartment buildings will be as effective in preventing its use as a park, as the erection of factory buildings. The amendments of 1942 and 1943, insofar as they affect plaintiff's property, are lacking in that basis of the public welfare necessary to sustain them as a valid exercise of zoning authority. *Taylor* v. *Village of Glencoe,* 372 Ill. 507; *Reschke* v. *Village of Winnetka,* 363 Ill. 478; *Tews* v. *Woolhiser,* 352 Ill. 212; *Forbes* v. *Hubbard,* 348 Ill. 166.

The plaintiff's cross appeal is based on the contention that the 1942 amendment to the zoning ordinance was, in fact, so comprehensive in its scope as to constitute a new zoning ordinance, rather than an amendment to the 1923 ordinance; that the provisions of the statute necessary to be followed to authorize the passage of an original zoning ordinance were not observed; that the statute applicable to the passage of amendments to zoning ordinances was likewise not complied with; and that, therefore, the 1942

amendment is invalid in its entirety. On this issue, the master found that the 1942 amendment, although admittedly comprehensive, was, nevertheless, actually an amendment, rather than a new ordinance, and that the reference of the amendment to a standing committee of the city council for hearings was a sufficient compliance with the statutory requirement that "no such amendments shall be made without a hearing before some commission or committee designated by the corporate authorities," (Ill. Rev. Stat. 1945, chap. 24, par. 73-8.) The superior court approved that finding. We are of the opinion that the contentions of the plaintiff on the cross appeal cannot be sustained. There is no question but what the 1942 ordinance was an amendment and not an original zoning ordinance. The legislature has seen fit to prescribe a single method for amending zoning ordinances, regardless of whether such amendments are narrow or comprehensive in their scope. The legislature has prescribed that an amendment shall be considered at a hearing before "some commission or committee designated by the corporate authorities," without limiting such commission or committee to the same type to which an original zoning ordinance must be referred. The fact that the statute provides for the dissolution of the original zoning commission upon the adoption of a zoning ordinance for the entire municipality (Ill. Rev. Stat. 1945, chap. 24, par. 73-2,) indicates that it was not contemplated that subsequent amendments to a zoning ordinance, enacted in accordance with section 8 of the Zoning Act (Ill. Rev. Stat. 1945, chap. 24, par. 73-8,) should be submitted to a zoning commission of the same type, unless the city council so elects. We are of the opinion that the procedure adopted by the city council in passing the amendment of December 4, 1942, was proper, and that the amendment, except as it may be improper for other reasons, as applied to specific property, is valid.

Injunctive relief is a proper remedy to prevent the enforcement of an invalid zoning ordinance. (*Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511; *Village of Euclid* v. *Ambler Realty Co.* 272 U. S. 365, 71 L. ed. 171, 47 S. Ct. 114.) The relief here granted was directed only against the enforcement of the invalid zoning ordinances. The decree does not prevent the city from making future amendments affecting the same property if conditions should so change as to warrant a rezoning which would not be arbitrary and unreasonable. It cannot be said that the authority of the city to validly exercise its police power through the medium of amendments to the zoning ordinance will be interfered with by the injunction granted in this case. It is only the arbitrary and, therefore, invalid exercise of the zoning authority which is restrained.

The city argues that by enjoining the enforcement of the comprehensive amendment of 1942, as applied to the plaintiff's property, the court has interfered with the power of the city to regulate and eventually eliminate nonconforming uses. The argument is, that if the operation of section 19 of the ordinance, which provides for the eventual elimination of nonconforming uses, is enjoined, then the city is rendered helpless insofar as the regulation of nonconforming uses is concerned. The argument is based on the erroneous assumption that plaintiff's use of its property is a nonconforming use. If, however, the rezoning amendments are invalid, as we hold they are, the erection of a factory by the plaintiff is a conforming use under the zoning ordinance of 1923. In view of our holding that the rezoning was invalid insofar as the plaintiff's property is concerned, the nonconformance section of the amending ordinance is no longer involved.

The decree of the superior court of Cook county is affirmed.

*Decree affirmed.*