(No. 31553.—

The Trust Company of Chicago, Trustee, *et al.,* Appellees, *vs.* The City of Chicago, Appellant.

*Opinion filed January 18, 1951.*

92

JOHN J. MORTIMER, Acting Corporation Counsel, (L. LOUIS KARTON, MAURICE- J. NATHANSON, and ARTHUR MAGID, of counsel,) all of Chicago, for appellant.

JACOBSON, NIERMAN & SILBERT, of Chicago, (DAVID SILBERT, and ARTHUR ALTSCHUL, of counsel,) for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an appeal by the city of Chicago from a declaratory judgment and decree of the circuit court of Cook County, holding the amendatory zoning ordinance of the city, adopted December 3, 1942, unconstitutional and void insofar as it affected certain property belonging to plaintiffs. The trial judge has certified that the validity of a

municipal ordinance is involved and that the public interest requires a direct appeal to this court.

In 1944, plaintiff The Trust Company of Chicago, a corporation, as trustee, and plaintiffs Pierre De Mets and Thula De Mets, his wife, as beneficiaries of the trust, acquired the property herein involved, which is located at the southwest corner of South Shore Drive and Sixty-seventh Street, in the city of Chicago, and improved with a two-story mansion-type residence, erected in 1917. Sixty-seventh Street runs east and west and is the southern boundary of Jackson Park immediately north of plaintiffs' property. It is a major public highway in the city, is heavily traveled and both a streetcar and a bus line are operated thereon. Directly across from plaintiffs' property, adjoining South Shore Drive, are the grounds, buildings and golf course of the South Shore Country Club, which extend from Sixty-seventh Street southward to Seventy-first Street and eastward to the shores of Lake Michigan. South Shore Drive is a public highway in the city of Chicago, under the control and maintenance of the Chicago Park District. It is a part of U. S. Route 41 and is heavily traveled, being a connecting link in the highway system between Michigan, Wisconsin, northern Illinois and the Chicago Loop to the north and southern Illinois and Indiana to the south and southeast. Because of the heavy traffic upon Sixty-seventh Street and South Shore Drive at the corner of plaintiffs' property, the Park Board some time ago acquired a portion of the northeast corner of plaintiffs' property and widened the turn there to permit the traffic to move more freely around the corner, and about two years ago erected an overhead ramp or pass across South Shore Drive at this corner for the use of pedestrians because of the heavy vehicular traffic at this corner.

In 1923 the city of Chicago adopted a comprehensive zoning ordinance, and in 1942, the amendatory ordinance involved in this proceeding was adopted. Under the orig-

inal zoning ordinance, enacted in 1923, the area lying between South Shore Drive on the east, Jeffery Avenue on the west (which is seven blocks west,) Sixty-seventh Street on the north and Seventy-first Street on the south, which area includes the property now owned by plaintiffs, was zoned or classified as an apartment district, with the exception only of one block in the southeast corner which was zoned for commercial use. The amendatory ordinance of 1942 made no change in the zoning of any of this territory, except only as to the half block fronting on South Shore Drive between Sixty-seventh and Sixty-eighth Streets and abutting on the west upon the alley running north and south midway between South Shore Drive and Oglesby Avenue, which is the first street west of the Drive. This half block, which includes plaintiffs' property, was by the amendatory ordinance changed from an apartment use to that of a single-family residence use.

This half block, so rezoned, is divided into six parcels or lots, fronting on South Shore Drive, one being vacant and the other five each being improved with a mansion-type single-family residence, and each being occupied by a single family. Plaintiffs' property has a frontage of 166 feet on South Shore Drive, the vacant lot a frontage of 75 feet, two of the other lots a frontage of 125 feet each, one a frontage of 75 feet, and one a frontage of 50 feet. The house immediately adjoining plaintiffs' property on the south was erected in 1914 and purchased in 1944 by its present owner and occupant. The next house south was built in 1915. The next one south was erected in 1926, and purchased in 1944 by its present owner and occupant. The next tract south is the vacant lot, and immediately south is a house erected in 1922.

It is undisputed that the area lying between South Shore Drive on the east and Jeffery Avenue on the west, Sixty-seventh Street on the north and Seventy-first Street on the south is an intensely developed residential area commonly

known as the South Shore District of Chicago, and is characterized by its numerous apartment buildings, ranging in height from three to sixteen stories, and its numerous dwelling units, ranging in size from one-room hotel type kitchenette apartments to ten-room suits, that it is generally regarded as a very fine and highly desirable apartment district, and that interspersed on almost every street in the area there are located a number of single-family homes, most of which were erected prior to 1923.

Defendant's expert witness, Arthur Kruggel, testified that this area, except only the portion thereof affected by the amendatory ordinance, is "essentially an apartment area." It is also undisputed that this rezoned half block, considered as a block under the provisions of the rezoning ordinance, in which plaintiffs' property is located, is an exceptionally fine residential block, and that the homes thereon are luxurious and attractive residences, with spacious, beautiful, well-kept lawns.

It is defendant's contention that the restrictions imposed upon this block by the amendatory zoning ordinance of 1942 are a valid exercise of the police power of the city in an attempt to preserve this block as an oasis of gracious family living in a locality of unique natural beauty.

The contention of plaintiffs is that the restrictions imposed upon their property by the amendatory ordinance are so unreasonable and discriminatory that the same constitutes an unlawful invasion of their private rights guaranteed by the constitution.

The rules of law applicable to cases involving the validity of zoning ordinances are so well established and have been so frequently and recently set forth in the opinions of this court, (*Galt* v. *County of Cook,* 405 Ill. 396; *Metropolitan Life Ins. Co.* v. *City of Chicago,* 402 Ill. 581; *People ex rel. Joseph Lumber Co.* v. *City of Chicago,* 402 Ill. 321; *Quilici* v. *Village of Mt. Prospect,* 399 Ill. 418; *2700 Irving Park Building Corp.* v. *City of Chicago,* 395

Ill. 138,) that it may seem unnecessary to refer, even briefly, thereto.

Every owner has the right to use his property in his own way and for his own purposes, subject only to the restraint necessary to secure the common welfare. (*Village of La Grange* v. *Leitch,* 377 Ill. 99.) This privilege was not created by the constitution but existed before its adoption and is guaranteed by it. (*2700 Irving Park Building Corp.* v. *City of Chicago,* 395 Ill. 138; *State Bank & Trust Co.* v. *Village of Wilmette,* 358 Ill. 311.) This privilege of a citizen to use his property according to his own will is both a liberty and a property right, (*Village of La Grange* v. *Leitch,* 377 Ill. 99; *People ex rel. Schimpff* v. *Norvell,* 368 Ill. 325,) subject always, however, to the police power of the State, under which new burdens may be imposed upon property and new restrictions placed upon its use when public welfare demands. (*2700 Irving Park Building Corp.* v. *City of Chicago,* 395 Ill. 138; *Bjork* v. *Safford,* 333 Ill. 355.) The constitutional declaration that private property shall not be taken for public use without just compensation or without due process of law is subordinated always to the interests of the public welfare as expressed through the exercise of the police power of the State. *Ehrlich* v. *Village of Wilmette,* 361 Ill. 213; *Forbes* v. *Hubbard,* 348 Ill. 166.

The police power of the State is that power required to be exercised in order to effectually discharge within the scope of the constitutional limitations its paramount obligation to promote and protect the public health, safety, morals, comfort and general welfare of the people. (*County of Du Page* v. *Henderson,* 402 Ill. 179. Zoning laws are enacted in the exercise of the police power. (58 Am. Jur., Zoning, #2, #3, #18.) A city possesses no inherent police power and cannot legislate upon or with reference to that, or any other subject, unless authorized by the General Assembly to do so. (*Father Basil's Lodge, Inc.* v. *City of*

*Chicago,* 393 Ill. 246.) The enactment of article 73 of the Revised Cities and Villages Act, (Ill. Rev. Stat. 1949, chap. 24, pars. 73-1 to 73-11,) by the legislature, is an express delegation of police power, under which municipalities are authorized to adopt and enforce zoning ordinances, thereby imposing reasonable restraints upon the use of private property.

While cities and villages have statutory authority for the enactment of zoning ordinances, nevertheless the governmental power so conferred to interfere by zoning regulations with the general rights of property owners is not unlimited, and such an ordinance, to be valid, must have a real and substantial relation to the public health, safety, morals, or general welfare. (*People ex rel. Joseph Lumber Co.* v. *City of Chicago,* 402 Ill. 321; *2700 Irving Park Building Corp.* v. *City of Chicago,* 395 Ill. 138; *Village of La Grange* v. *Leitch,* 377 Ill. 99; *Johnson* v. *Village of Villa Park,* 370 Ill. 272; *People ex rel. Kirby* v. *City of Rockford,* 363 Ill. 531; *Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511.) Whether the restraints imposed by a zoning ordinance upon the use of private property do, in fact, bear a real, substantial relation to the public health, safety, comfort or welfare, or whether they are essentially capricious and unreasonable is a question subject to judicial review. (*People ex rel. Joseph Lumber Co.* v. *City of Chicago,* 402 Ill. 321; *Quilici* v. *Village of Mt. Prospect,* 399 Ill. 418; *Offner Electronics, Inc.* v. *Gerhardt,* 398 Ill. 265; *Harmon* v. *City of Peoria,* 373 Ill. 594.) However, it is primarily the province of the municipal body to which the zoning function is committed to draw the line of demarcation as to the use and purpose to which property shall be assigned or placed, and it is neither the province nor duty of courts to interfere with the discretion with which such bodies are vested, unless the legislative action of the municipality is shown to be arbitrary, capricious and unrelated to the public morals, safety and

general welfare. (*People ex rel. Joseph Lumber Co.* v. *City of Chicago,* 402 Ill. 321; *2700 Irving Park Building Corporation* v. *City of Chicago,* 395 Ill. 138; *Morgan* v. *City of Chicago,* 370 Ill. 347.) Ordinances duly enacted lie behind the bulwark of presumptive validity and the burden is upon the one assailing them to overcome that presumption. (*Rothschild* v. *Hussey,* 364 Ill. 557.) The presumption obtains that a zoning ordinance is valid and the burden of proof is upon the party attacking the ordinance to show affirmatively that it is arbitrary and unreasonable. (*Galt* v. *County of Cook,* 405 Ill. 396.) Where there is room for a legitimate difference of opinion concerning the reasonableness of an ordinance governing the use of private property or where such question of reasonabless is fairly debatable, the courts will not interfere with the legislative judgment. (*People ex rel. Joseph Lumber Co.* v. *City of Chicago,* 402 Ill. 321; *Burkholder* v. *City of Sterling,* 381 Ill. 564; *Harmon* v. *City of Peoria,* 373 Ill. 594; *Ehrlich* v. *Village of Wilmette,* 361 Ill. 213; *Forbes* v. *Hubbard,* 348 Ill. 166.) In ascertaining whether a particular zoning ordinance is in the interest of the public, each case must, of course, be determined on its peculiar facts. (*Galt* v. *County of Cook,* 405 Ill. 396; *Quilici* v. *Village of Mt. Prospect,* 399 Ill. 418; *Johnson* v. *Village of Villa Park,* 370 Ill. 272.) Whether the impact of a zoning ordinance upon the particular use which an owner may desire to make of his property is a reasonable and permissible interference with his rights as owner, in the exercise of the police power for the public benefit, or whether it is an arbitrary and unreasonable, and therefore a constitutionally forbidden deprivation of private property, is always a question depending upon the peculiar facts and circumstances of the particular case. *Village of La Grange* v. *Leitch,* 377 Ill. 99; *State Bank and Trust Co.* v. *Village of Wilmette,* 358 Ill. 311.

Among the particular facts and circumstances to be taken into consideration in determining whether a pur-

ported exercise of the police power is so unreasonable and confiscatory as to constitute an unlawful invasion of private rights are the character of the neighborhood, the zoning classification and use of nearby property, the extent to which property values are diminished by the particular zoning restrictions involved, and the gain to the public compared to the hardship imposed upon the individual property owner. (*Galt* v. *Cook County,* 405 Ill. 396.) A zoning ordinance may not be based alone on aesthetic considerations, (*Forbes* v. *Hubbard,* 348 Ill. 166,) although it is no objection to such an ordinance that it tends to promote an aesthetic purpose, if its reasonableness may be sustained on other grounds. *Neef* v. *City of Springfield,* 380 Ill. 275.

The validity of an amendatory zoning ordinance, with respect to the exercise of the police power, must be determined by the same rules and tests ·as those applied in ascertaining the validity of original zoning ordinances; and where the amendment of a zoning ordinance is clearly an arbitrary and unreasonable action on the part of the city council, ostensibly taken to promote the public health, safety, comfort, morals or welfare, but having no substantial relation to any of those objects, such amendment is of no force and effect. This results not because the city may not repeal or amend the existing ordinance, but because in enacting the new legislation, as in enacting the original, it must stay within constitutional limitations, which exclude arbitrary and unreasonable action as lacking due process of law and forbid the confiscation of private property when necessary to preserve or promote the public welfare. The power of a city council to amend a zoning ordinance is not unfettered and can be exercised only when the public good demands or requires that the amendment be made. (*Offner Electronics, Inc.* v. *Gerhardt,* 398 Ill. 265.) It cannot be exercised merely because certain individuals want it done or think it ought to be done. (*Dunlap* v. *City of Woodstock,* 405 Ill. 410.) An amendatory zoning ordinance

cannot be sustained if the evidence fails to show that it was passed for the public good, but instead tends to show that it was passed in deference to the wishes of certain individuals. *Kennedy* v. *City of Evanston,* 348 Ill. 426.

A purchaser of property has the right to rely upon the classification which existed as to that property when the purchase was made and upon the rule of law that its classification will not be changed so long as the basis of public welfare remains the same. (*Metropolitan Life Ins. Co.* v. *City of Chicago,* 402 Ill. 581; *Kennedy* v. *City of Evanston,* 348 Ill. 426.) This does not mean, however, that a purchaser of property upon which a restriction had previously been imposed by a zoning ordinance may not attack the validity of such restriction. (*Forbes* v. *Hubbard,* 348 Ill. 166.) Neither such purchase nor the fact that the purchaser or his grantor may have acquiesced in such classification will estop the purchaser from testing the validity of the ordinance, since this court is committed to the doctrine that mere acquiescence, irrespective of the length thereof, cannot legalize the clear usurpation of power which offends against the basic law. (*Harmon* v. *City of Peoria,* 373 Ill. 594; *Forbes* v. *Hubbard,* 348 Ill. 166.) Zoning ordinances, whether they be original or amendatory legislation, and regardless of how long or by whom they have been recognized as legal, cannot be sustained if in violation of the constitution.

It is clear from the record in this case that there is no actual or reasonable connection between the rezoning of plaintiffs' property from apartment to single-family residence and the public health, safety, comfort, morals or welfare. It is also clear from the undisputed testimony contained in the record that the erection of a multistoried apartment building on plaintiff's property would in no way injure or detract from the general welfare of the city or the general welfare of the community wherein the property is situated or from the general welfare of any community

or neighborhood adjacent to said property, when the city or any such community is considered as a whole; and it is as a whole that a municipality or a community must be considered when zoning laws and ordinances are involved. (*Michigan-Lake Building Corp.* v. *Hamilton,* 340 Ill. 284, 298.) It is undisputed that such a multi-storied apartment building would furnish homes where not one, but many families could live amid beautiful surroundings, with Jackson Park across from Sixty-seventh Street on the north, and with Lake Michigan and the spacious grounds of the South Shore Country Club across from South Shore Drive on the east.

It is apparent from the original zoning ordinance of 1923, from the amendatory ordinance of 1942, from an examination of the respective use maps attached to each ordinance, and from the evidence, that the change made by the amendatory ordinance in the block wherein plaintiffs' property is situated was not made for the public good, but was made for the benefit only of those residents of the block who desired to exclude multistoried apartment buildings therefrom. Under the 1923 ordinance the entire area between Sixty-seventh and Seventy-first Streets, extending from South Shore Drive west seven blocks to Jeffery Avenue, as well as the entire frontage on the west side of South Shore Drive from Sixty-seventh Street to Seventy-first Street and the entire frontage on the west side of Yates Avenue to Seventy-ninth Street, (said Yates Avenue being a continuation due south from Seventy-first Street of South Shore Drive,) were all solidly zoned for apartment use, with the exception only of the corners at Seventy-first, Seventy-fifth, and Seventy-ninth Streets, which corners were zoned commercial. The 1942 ordinance made no change whatever in any of this zoning, except that the classification of the half block in which plaintiffs' property is situated was changed from apartment to that of single-family residence. This half block, as before stated, in addition to

plaintiffs' property and a vacant lot, has located thereon four mansion-type single-family residences. The only witnesses produced by defendant at the trial in the court below, other than one expert witness, were two of the owners and occupants of these residences, who testified that they purchased the same in reliance on the single-family zoning of the block, and that had it been zoned for apartments they would not have purchased. There is not one word in the testimony of these witnesses nor one word in the testimony of any witness in this case indicating any necessity for the rezoning of plaintiffs' property or any benefit to the public welfare in any manner from such rezoning.

It readily appears from the record in this case that plaintiffs' property is characterized by, and is very similar to, property lying west and south thereof zoned for apartments. There is no difference between plaintiffs' property and the other properties abutting on Sixty-seventh Street between South Shore Drive and Jeffery Avenue, all of which, except plaintiffs', are zoned for apartments. Also, there is no such difference between the single block, or rather half block, here affected by the amendatory ordinance and the other property also fronting on the west side of South Shore Drive between Sixty-seven and Seventy-ninth Street as would warrant zoning the half block in question for single-family residence use, while at the same time zoning all the remainder, except only the three commercial corners, for apartments. The conclusion in this case is inescapable, not only from the record of the proceedings in the trial court but from the brief and argument of defendant in this court, that the city, in rezoning the properties here affected and also in defending such rezoning in this court, was not seeking to promote or preserve the general welfare but was seeking to bestow upon the individual residents of the rezoned properties special benefits in that they might continue in their "oasis of gracious family living," free from what they might regard as the nuisance

of apartment buildings in the block. This action of the city under the rezoning ordinance of 1942 finds no justification in any aspect of the police power asserted for the public good. The public good means more than the special benefits from a zoning ordinance which are conferred only upon a few. It is not the purpose of the zoning law to permit special privileges to a few property owners.

The zoning ordinance of the city of Chicago, as amended on December 3, 1942, insofar as it applies to plaintiffs' property, is arbitrary and unreasonable, and therefore cannot be sustained.

The circuit court did not err in entering the judgment and decree, and the same is affirmed.

*Judgment affirmed.*