(No. 23233.—

THE PEOPLE *ex rel.* Marjorie L. Kirby, Appellee, *vs.* THE CITY OF ROCKFORD *et al.* Appellants.

*Opinion filed June 10, 1936.*

CHARLES S. THOMAS, Corporation Counsel, and ALF O. AHLSTRAND, City Attorney, (C. A. PEDDERSON, of counsel,) for appellants.

GUYER & BERRY, (STANLEY H. GUYER, of counsel,) for appellee.

Mr. Chief Justice Herrick delivered the opinion of the court:

The relator, Marjorie L. Kirby, in the circuit court of Winnebago county, on November 22, 1934, filed her petition for writ of *mandamus* directed to the building inspector of the city of Rockford commanding him to issue a permit to her for the construction of a gasoline filling and service station, together with other buildings, on lots 23, 24, 25 and 26 in block 2 of Evergreen Park subdivision in Rockford, owned by the relator. The city of Rockford was also made a party. A plea was filed by the defendants setting up that the lots mentioned were in an area classified as "A" residential district under the zoning ordinance of the city, in which gasoline filling stations and buildings designed for use and occupancy for business purposes are prohibited. A replication filed by the petitioner admitted the existence of the ordinance but averred that it was an invalid exercise of the police power of the city; that the ordinance constituted a taking of the relator's property without just compensation and without due process of law, contrary to the provisions of sections 2 and 13, respectively, of article 2 of the constitution of this State. Evidence was heard and an order was entered directing that a peremptory writ of *mandamus* issue as prayed. From that judgment the city of Rockford and the building commissioner have appealed.

On March 5, 1934, the zoning board of the city denied the relator's petition to re-zone the lots, which she had theretofore presented to that board. Thereafter the relator submitted plans and specifications to the building inspector asking for a building permit to erect store buildings and a gasoline station on such lots in conformity with the plans and specifications submitted. The permit was denied. It is not claimed that the plans and specifications did not comply with the building ordinances of the city. The good

faith of the sale contracted for by the relator of certain property hereinafter referred to is not contested.

In the case of *People* v. *City of Rockford,* 354 Ill. 377, the judgment of the circuit court of Winnebago county holding void this same ordinance as applied to lots 21 and 22 of this same block was affirmed by this court. The following plat shows the location of the separate properties in the block and the relative positions of the lots involved in the *City of Rockford case, supra,* to the relator's property:

The lots in the block are on the south side of East State street between Shaw street and St. Louis avenue. The rear of the lots are eight feet lower than the front adjacent to East State street. Lots 21 and 22 had not been improved at the time of the hearing. An alley extends along and past the rear of the six lots. In a general way the territory for some distance north, south, east and west of the lots in question is classified for use as "A," "B" and "C" residential, from which local business is excluded, except

in a few small areas not in the immediate neighborhood of the property here involved. The classification "A" permits only single-family residence houses to be erected on the property so classified. Immediately across Shaw street, to the west of lot 21, are five buildings devoted to business, fronting on East State street. The buildings have been in existence for several years. The first of these buildings directly across Shaw street from lot 21 is a brick building, on the first floor of which is a grocery store. The second story is used as an apartment. Immediately west is a one-story building with brick veneer front occupied as a drug store. To the west, adjoining the drug store, is a double, two-story brick veneer building, the first floor of which on one side is used as a bakery and grocery. The other side is occupied by a meat market with a shoe repair shop in the rear, and the second floor is devoted to residential purposes. The next west is a one-story brick building occupied as a barber shop. Next west is a vacant lot, and west thereof for some distance are residences. South of lots 25 and 26, across the alley, is a vacant lot, and south of that is a bungalow fronting east on St. Louis avenue. Across St. Louis avenue east of lot 26 is a white frame house. South thereof is a bungalow, and in succession are a brick colonial house, a shingle colonial house and a stucco house of medium-class type. West of the alley in block 2 projected and south of the business buildings, and fronting east on Shaw street, is a two-story residence. Across East State street to the north, and immediately opposite lots 26, 25 and a part of lot 24, is an elementary and grade school, called Highland School. The school grounds occupy that entire block. Rome avenue is the west boundary and Rockford avenue the east boundary of the school premises. Neither of these streets extends further south than to East State street. Shaw street and St. Louis avenue extend north only to East State street. Shaw street is over one hundred feet west of Rome avenue and St. Louis avenue is over one hun-

dred feet west of Rockford street, so there are no direct through streets near the lots north of the school. There is no property south of East State street for a distance of at least five blocks east and west used for general business purposes. State street is paved with concrete and extends to and through the main business part of Rockford and is an arterial highway and United States route for automobile traffic, connecting Rockford with Belvidere, Marengo, Elgin and Chicago to the east and Freeport, Dubuque and other cities to the west. There is a street car track laid in the street. The traffic is very heavy upon this street. The property in question here is about six blocks from the easterly corporate limits of Rockford. Residences have been built adjacent to and in the vicinity of the stores fronting on East State street immediately west of Shaw street since the store rooms were erected. There are three residences of high-class character erected at considerable expense to the west within a distance of two blocks. The neighborhood, the properties there and uses thereof are of the same general character as they existed at the time of the litigation before this court in the *City of Rockford case, supra,* and we will not further prolong this opinion by the details of the location of residences, business property and public institutions. On the trial the relator offered in evidence a contract of sale with an oil company for the sale of the north one hundred feet of lot 26 and the north one hundred feet of the east six feet of lot 25 for $4000, on which purchase price $2500 had been paid.

The court has recognized the power of municipalities to pass and enforce zoning ordinances which impose a reasonable restraint upon the use of private property. Such restraint, however, is not an arbitrary nor even a discretionary one but is always subject to review by the courts. (*Western Theological Seminary* v. *City of Evanston,* 325 Ill. 511, 522; *People* v. *Village of Oak Park,* 331 id. 406, 412; *People* v. *City of Rockford, supra.*) The ordinance must bear

a definite relation to the public health, safety, morals or general welfare. In those cases where the zoning bears a substantial interdependence to the public health, safety, morals or general welfare, a municipality may, in the exercise of the police power, enact such local legislation, and the rights of the property owner to the unrestricted use of his property are subordinated to the exercise of such police power. On the contrary, where there is no material relation of the restrictive ordinance to the public good, such ordinance cannot, under the guise of a zoning regulation, either confiscate the property or inflict a substantial financial injury upon the owner thereof. Such legislation is violative of sections 2 and 13, respectively, of article 2 of the State constitution and the fifth and fourteenth amendments to the Federal constitution. *Forbes* v. *Hubbard,* 348 Ill. 166, 174, 175; *Tews* v. *Woolhiser,* 352 id. 212, 219; *State Bank and Trust Co.* v. *Village of Wilmette,* 358 id. 311, 317; *Ehrlich* v. *Village of Wilmette,* 361 id. 213, 224, 225; *Dobbins* v. *City of Los Angeles,* 195 U. S. 223, 49 L. ed. 169, 175, 177; *Pennsylvania Coal Co.* v. *Mahon,* 260 id. 393, 67 L. ed. 322, 326.

The general scheme of a zoning ordinance may be valid, yet, as applied to a particular property within the area zoned, such facts may exist that if the terms of the ordinance are enforced it would result in an arbitrary and unreasonable injury to the owner of the property or the confiscation thereof. In that situation, as applied to such designated real estate, the ordinance is void. *Ehrlich* v. *Village of Wilmette, supra; State Bank and Trust Co.* v. *Village of Wilmette, supra; Tews* v. *Woolhiser, supra.*

At the time of the trial in the circuit court lots 21 and 22 had not as yet been improved by the construction of business rooms thereon, but in view of our decision in *People* v. *City of Rockford, supra,* in the consideration of the case at bar we must assume that such lots will be improved for business purposes. The lots the subject matter of this liti-

gation are vacant and undeveloped. Some of the witnesses produced by the city testified on cross-examination that the lots were not desirable for single-family residences, but there might be a market for them for the construction thereon of flats or apartments.

The evidence for the relator in the trial court, on the assumption that lots 21 and 22 were improved for local business, established the following average valuations of lots 23, 24, 25 and 26: Lot 23 for residence $583, for business $1750; lot 24 for residence $583, for business $1750; lot 25 for residence $733, for business $2416; lot 26 for residence $866, for business $3250. In percentage, according to the testimony of these witnesses, the relator's property for residence use is worth thirty per cent of its value for business. Applying the same mathematics to the testimony of the city's witnesses the following relative values were established: Lot 23 for residence $512, for business $1493; lot 24 for residence $535, for business $1614; lot 24 for residence $571, for business $1657; lot 26 for residence $740, for business $2014. Upon this basis of percentage the four lots for residence purposes are worth thirty-five per cent of their value for business. The testimony further shows that on the basis of general taxes as of the amount assessed for the year 1933, the entire value of lot 23 will be consumed by taxes and special assessments now resting against the property in less time than eight years, lot 24 in less than ten years, lot 25 in slightly over ten years, lot 26 in six and one-quarter years. The proof is that the insurance rate will not be increased in the neighborhood by reason of the property being used for business purposes.

There was evidence that the store rooms, if constructed on the lots in accordance with the plans, could be readily rented at a substantial rental. Photographs showing the type of buildings in the immediate neighborhood were introduced in evidence by both the relator and the respondents.

538

It is proper to consider the extent to which the value of property has been diminished by the zoning ordinance for the purpose of determining whether its invasion of property rights is unreasonable and confiscatory. (*Forbes* v. *Hubbard, supra; Tews* v. *Woolhiser, supra; People* v. *City of Rockford, supra.*) It is apparent that the prohibited use of the relator's property to other than single-family residences would prevent its ultimate improvement or result in having residences of only the cheapest type thereon. Such restraint, under the facts shown here, inflicts a drastic financial loss on the relator.

On the record there is no connection between the destruction of values of the relator's premises by the zoning ordinance and the public health, morals, safety or general welfare. As applied to the relator's property the ordinance is unreasonable and void. *People* v. *City of Rockford, supra; Pennsylvania Coal Co.* v. *Mahon, supra.*

The judgment of the circuit court of Winnebago county is affirmed.

*Judgment affirmed.*