(No. 30890.—

E. O. SCHNEIDER, Appellee, *vs.* THE BOARD OF APPEALS OF THE CITY OF OTTAWA *et al.*—(E. LINWOOD CONNELLEE *et al.*, Appellants.)

*Opinion filed January 19, 1949—Rehearing denied March 16, 1949.*

E. Linwood Connellee, and Richolson, Wilhelm & Davies, (Taylor E. Wilhelm, of counsel,) all of Ottawa, for appellants.

John H. Armstrong, and James L. Waring, both of Ottawa, for appellee.

Mr. Justice Thompson delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of La Salle County reversing and setting aside the decision of the board of appeals of the city of Ottawa, approving the action of the city engineer in issuing a permit to appellants to make certain alterations in a residence building owned by them on Pearl Street in said city. The presiding judge certified as to the validity of an ordinance being involved, and that the public interest required the cause to be reviewed. The cause is here pursuant to such certificate.

The controversy arose when the city engineer of Ottawa, on July 26, 1947, granted to E. Linwood Connellee and Anita N. Connellee a permit to make certain repairs and alterations in a three-story building, located at 622 Pearl Street, thereby enlarging it from five to ten apartments. An appeal from the decision of the city engineer to the board of appeals of the city of Ottawa was taken by E. O. Schneider, who lived three blocks west on Pearl Street. A hearing was had before the board of appeals and the decision of the city engineer affirmed. A writ of *certiorari* was sued out of the circuit court and after a hearing the court reversed the decision of the board of appeals and

revoked the permit issued by the city engineer. The Connellees have appealed from that judgment.

Appellants, E. Linwood Connellee and Anita N. Connellee, purchased the property from Mrs. Rose Lucey in August, 1946. In the year 1939 Mrs. Lucey, after the death of her husband, converted it and also the stables in the rear facing on Chapel Street into apartments. The home was divided into five apartments and has been used continuously from 1939 to the present time as a five-family or five-apartment house.

The city of Ottawa adopted a zoning ordinance on August 25, 1941, dividing the city into five zoning districts. The Pearl Street property is located in that part of the city zoned as the "A" residence district. The ordinance permits buildings and premises in that district to be used for one-family dwellings, two-family dwellings and eleven other purposes, but does not include apartments or apartment houses. Section 8 of the ordinance is entitled "Nonconforming Uses," and provides: "Any lawful use existing at the time of the adoption of this ordinance of any building or premises may be continued, although such use does not conform to the provisions of this ordinance for the district in which the use is situated. The area occupied by such use may be enlarged, provided such enlargement shall not exceed an area equal to 50% of the area of the ground floor of that part of the building in which said non-conforming use is situated, or such use may be extended throughout the building, provided no structural alterations are made therein." Paragraph (kk) of section 1 of the ordinance defines "structural alterations" as "Any change in the supporting members of a building such as bearing walls or partitions, columns, beams or girders, excepting such alterations as may be required for the safety of the building."

The zoning map of the city, which was adopted by the city council as a part of the zoning ordinance, and which

purports to show the five zoning districts into which the city was divided and the nonconforming property in the district, does not designate the Pearl Street property as nonconforming, although it indicates that the stables on Chapel Street are nonconforming. The zoning map was made by the city engineer from classifications or record sheets containing information obtained through investigation of city employees. There was a sheet for each piece of property. The classification sheet for the 622 Pearl Street property contained the information that this was a five-apartment building housing five families and two roomers.

It is contended by the appellants that the ordinance is invalid because the map was not physically attached to and published with the ordinance. It is further contended that the ordinance is an invasion of their constitutional rights and amounts to the taking of their property contrary to constitutional prohibitions. They also claim that the repairs and alterations proposed do not constitute a violation of the ordinance.

The appellee, Schneider, challenges the jurisdiction of this court to take the case on direct appeal and urges that appellants, in their answer filed with the board of appeals, expressly admitted the ordinance was in full force and effect and based their defense solely on the theory that the proposed alterations were not in violation of its terms. He also claims that it was appellants' codefendant, the board of appeals, and not appellants who objected in the circuit court that the ordinance was illegal because not fully published and claims that appellants never, at any time, either before the board of appeals or in the trial court raised any question as to the validity of the ordinance, but raised only the question of its application to their property.

We have held that where a defendant charged with the violation of an ordinance does not question its validity, but contends only that it does not apply to him and that the acts with which he is charged do not amount to a violation

of the ordinance, he cannot, after judgment against him on the issues as presented, attempt for the first time to attack the validity of the ordinance either in the court below or on direct appeal to this court. (*Village of Riverside* v. *Kuhne,* 397 Ill. 108.) The certificate of the trial judge that the validity of a municipal ordinance is involved and that in his opinion the public interest requires the appeal to be taken directly to this court is ineffective to confer jurisdiction if it is contrary to what is shown in the record. (*Village of Riverside* v. *Kuhne,* 397 Ill. 108; *Akouris* v. *Village of Oak Lawn,* 389 Ill. 582.) We find, however, in the instant case appellants called as their witness the city clerk and attempted to prove by him that the zoning map was not filed or published with the ordinance. They also called Schneider as an adverse witness and questioned him concerning the publication and filing of the zoning map. They moved to dismiss the petition for *certiorari* and to quash the writ, alleging that if the prayer of the petition was granted, they would be deprived of the rights guaranteed to them under section 2 of article II of our State constitution. Before final judgment was entered they filed a motion asking the court to rule on every constitutional question presented and also to rule on the validity of the ordinance. The final judgment entered found that appellants had brought to the attention of the court two specific questions, namely, whether their constitutional rights had been violated and whether the zoning ordinance was illegal and void. The court further found in and by said final order that the zoning ordinance had been passed and adopted by the city council in compliance with the statute of this State and was a valid ordinance in full force and effect, of which appellants had full notice and knowledge at the time they purchased the property here involved, and that the property was classified on the zoning map, which was made a part of the ordinance, as a residence property in the "A" residence district, and, based upon such finding, made and

entered an adjudication that the ordinance was properly enacted and is a legal and valid ordinance, and that by reason thereof and by reason of appellants' knowledge of said ordinance at the time of the purchase, their constitutional rights have not been violated. Upon this state of the record showing that the question of the validity of the ordinance was not only presented to but decided in the trial court, it cannot be contended that the trial judge's certificate that the validity of a municipal ordinance is involved is ineffective to confer jurisdiction.

The right of cities and villages to enact zoning ordinances, thereby imposing a reasonable restraint upon the use of private property, is established beyond question or doubt. The right which every owner has to use his property in his own way and for his own purposes is subject always to the exercise of police power and it is in the exercise of this power that zoning ordinances are adopted. The police power, however, is limited to enactments having reference to the public health, safety, morals or welfare, and zoning ordinances which restrict the property rights of individuals without having any direct substantial relationship to the promotion of the public health, safety, morals or welfare are invalid. (*Village of La Grange* v. *Leitch,* 377 Ill. 99.) Whether an ordinance has any real substantial relation to the public health, comfort, safety or welfare, or is arbitrary or unreasonable is a question that is subject to review by the courts. (*Offner Electronics, Inc.* v. *Gerhardt,* 398 Ill. 265; *Harmon* v. *City of Peoria,* 373 Ill. 594.) Highly injurious restrictions lacking basis in the public good come within the constitutional inhibition against taking private property for public use without just compensation. (*Tews* v. *Woolhiser,* 352 Ill. 212.) The general scheme of a zoning ordinance may be valid, yet, as applied to a particular property within the area zoned, such facts might exist that if the terms of the ordinance are enforced it would result in an arbitrary and unreasonable

injury to the owner of the property or the confiscation thereof. (*People ex rel Kirby* v. *City of Rockford,* 363 Ill. 531.) In that situation, as applied to such designated real estate, the ordinance is void. (*Douglas* v. *Village of Melrose Park,* 389 Ill. 98; *People ex rel. Kirby* v. *City of Rockford,* 363 Ill. 531; *Village of La Grange* v. *Leitch,* 377 Ill. 99.) Every zoning case must be determined upon its own peculiar facts. (*Anderman* v. *City of Chicago,* 379 Ill. 236; *Village of La Grange* v. *Leitch,* 377 Ill. 99.) The right to a nonconforming use is a property right and any provision of a statute or ordinance which takes away that right in an unreasonable manner, or in a manner not grounded on public welfare, is invalid. (*Douglas* v. *Village of Melrose Park,* 389 Ill. 98.) The statute, under the authority of which the zoning ordinance of the city of Ottawa was adopted in August, 1941, expressly provided: "In all ordinances passed under the authority of this article, due allowance shall be made for existing conditions, the conservation of property values, the direction of building development to the best advantage of the entire municipality and the uses to which the property is devoted at the time of the enactment of such an ordinance. The powers conferred by this article shall not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted." Ill. Rev. Stat. 1941, chap. 24, par. 73-1.

In 1941, when the zoning ordinance was passed, and also in 1946, when appellants purchased the property, the building was being used and operated as an apartment house. It contained five apartments, all located on the first and second floors. The proposed alterations include no new buildings and no new additions to the house other than an outside stairway on both the north and south sides. The five additional apartments are obtained by utilizing the waste space on the first and second floors and dividing into rooms the third floor, which is all open space and used

only for playing basketball. Robert H. Newell, the city engineer, testified that the plans do not provide for structural changes, that he examined the premises and there were no changes in the supporting members of the building as defined by the ordinance, such as bearing walls, partitions, columns, beams or girders. L. R. Jones, an experienced carpenter, who had been engaged in construction work for many years and was doing the work on the building, also testified that there would be no changes in the supporting members of the building, such as separating walls or partitions, crossbeams or girders. Norman Cook, the architect who drew the plans for rebuilding the north porch, testified that the porch made no change in the supporting members of the building. The only witness who testified that structural changes would be made was John R. McLane, an architect and engineer, who was called by appellee to testify as an expert. He was shown the plans of the first, second and third floors, the north porch and the outside of the house, as proposed to be remodeled, and testified that he did not know what the structural condition of the building was prior to these plans and could not tell from the drawings whether there were to be any structural changes in the first, second or third floors. He testified that structural changes were shown in the drawing of the north porch, that the new stairway is a structural change, and that the handrail would necessarily be considered a structural change. His attention was not called to the definition of the term "structural alterations" given in the ordinance, and it is apparent from his testimony that the meaning which he ascribed to the term when testifying that the plans and drawings showed structural changes did not accord with the definition contained in the ordinance.

The only testimony as to the respective areas of the ground and third floors was given by the city engineer, who testified in the circuit court that the total area of the ground floor was 4630 square feet and of the third floor,

2112 square feet, which did not exceed 50 per cent of the ground-floor area. This testimony was given by him in the circuit court in correction of his testimony before the board of appeals, where he had given the area of the first floor as 3138 square feet.

It is clear from the foregoing that the record furnishes no basis for any contention that the proposed alterations are in violation of the provisions of the ordinance concerning the enlargement or extension of a nonconforming use.

Appellee claims that the alterations are a violation of section 9 of the ordinance, which provides that a dwelling in the "A" residence district may be erected to a height of three stories, provided the third floor of such building shall not contain an independent apartment. Such a contention needs only to be mentioned to be rejected, as the plain meaning of section 9 is that the above provision shall apply only to buildings erected or to buildings upon which a third story is erected after the ordinance becomes effective. The construction which appellee would put on section 9 would render nugatory that part of section 8 of the ordinance providing for the enlargement and extension of a non-conforming use and would make said provision in section 8 wholly inapplicable to such cases as the present one, to which it was obviously intended to apply. The rules for the construction of an ordinance are the same as those applied in the construction of a statute. (*Dean Milk Co.* v. *City of Chicago,* 385 Ill. 565.) One of the rules in the construction of statutes is that if there be two affirmative statutes or two affirmative sections in the same statute, on the same subject, the one does not repeal the other if both may consist together, and the courts will seek for such a construction as will reconcile them. (*Fowler* v. *Pirkins,* 77 Ill. 271.) Another rule of statutory construction is that where two acts or parts of the same act are seemingly repugnant, they should be so construed, if possible, that they both may stand. (*Anderson* v. *City of Park Ridge,* 396

Ill. 235.) By reading section 8 in connection with section 9 it can clearly be seen that effect can be given to both these sections, in accordance with their terms, without in any particular, or in any instance, the latter section repealing the former.

If, however, it be assumed that the zoning ordinance denies appellants the privilege of improving and altering their property as proposed, then unless such prohibition is reasonable and bears a rational relation to the protection of the public health, morals, safety and general welfare, the ordinance as so applied to appellants' property would be void.

The land owned by appellants upon which the building in question stands has a frontage of 180 feet on Pearl Street, and it is 30 feet from the Pearl Street property line to the north porch of the building. On the opposite side of Pearl Street is a school, and immediately opposite their building in the rear, facing on Chapel Street, are the old stables which are converted into and being used for apartments. Approximately one block south, on the northwest corner of Congress and York Streets, is another apartment house, and two and one-half blocks east on Pearl and Green Streets is another apartment building. All of these buildings are in the same zone as appellants' property, the "A" residence district. Main Street, which is the second street south of Pearl, is zoned for apartments, and in that district, on the corner of Main and Divisions Streets, the "Eastover," which is a large building used as an apartment house, is situated two streets south and two blocks west of appellants' property.

The ordinance permits buildings and premises in the "A" residence district to be used for one-family dwellings and two-family dwellings, but does not permit them to be used for apartments or apartment houses. The ordinance defines an "apartment or apartment house" as a "building which is used or intended to be used as a home or residence for two

or more families living in separate suites or sets of rooms" and defines "family" as "one or more individuals, living, sleeping, cooking and eating on the same premises as a single household unit." The term "family" as used in the ordinance manifestly bears no relation in fact to the number of persons or families living in a building, but evidently contemplates that any number of persons, whether related by ties of blood or marriage or wholly unrelated, may occupy a building as a family, provided they live as a single household unit, using a single kitchen, and divided the household expenses in some manner among them or some of them. The ordinance does not limit the number of persons who may occupy a building in the "A" residence district, provided only they live as a single or as two separate household units. However, there is no more reason why the use of appellants' property by ten sets of persons maintaining ten separate household units should be regarded as any more adversely affecting the public welfare than if the same number of persons were living in the property as a single or as two separate household units.

The argument of appellee in support of the judgment and the theory upon which the trial court decided the case, as is apparent on the face of the order, is that because of the classification of the property as residence property on the zoning map which was a part of the ordinance, and because of appellants' purchase of the property with full knowledge of its physical condition and of the provisions of the ordinance, the permit issued to appellants authorizing them to improve and alter the premises is null and void. We find, however, that appellants as such purchasers are entitled to the same rights under the ordinance as would be their grantors, (*Forbes* v. *Hubbard,* 348 Ill. 166;) and the fact that the property was designated on the map as occupied by a conforming use when it was in fact occupied by a lawful nonconforming use would not deprive the property of its right to the nonconforming use. The ordinance pro-

548

tected such nonconforming use by providing not only for its continuance, but by providing also, as above stated, for its enlargement and extension.

In view of the circumstances as disclosed by the record, as we have above pointed out, it is clear that if the ordinance be construed as prohibiting the granting of a permit to appellants to repair and alter their building in the manner proposed, then the ordinance is void to that extent, as so applied to appellants' property. This conclusion make it unnecessary to consider appellants' contention that the ordinance was not adopted and published as required by law and is therefore void as a whole.

For the reasons above pointed out, the judgment of the circuit court is reversed.

*Judgment reversed.*