[No. 32675.   Department Two.   March 4, 1954.]

DONALD M. HAUSER *et al., Respondents,* v. SAM K.
ARNESS *et al., Appellants.*[1]

*James Munro,* for appellants.

*Greenwood & Shiers,* for respondents.

[1]Reported in 267 P. (2d) 691.

DONWORTH, J.—Plaintiffs brought this action to enjoin defendants from using lots 52, 53, 54, and 55 of Kingston Beach Tracts in Kitsap county near the town of Kingston for log dumping and booming operations. The trial court found that defendants' log dumping and booming were being carried on in violation of the Kitsap county zoning ordinance and consequently constituted a nuisance.

The court entered a decree permanently enjoining the defendants from dumping or booming logs "on, over or across" the aforesaid lots and from filling in the tideland area in front of the lots and using the fill abutting the lots for log dumping or booming. However, the court made the effective date of its decree May 1, 1954, to allow defendants a year within which to complete their logging operations in that area.

Plaintiffs Hauser and wife are the owners of two lots adjoining the lands here in dispute on the southeast, and the other thirty-six plaintiffs are the owners of other lots in the area.

Plaintiffs' respective lots are improved with houses, some of which are occupied only during the summer months and others which are used as permanent homes. The lots owned by defendants and those owned by plaintiffs all front on Apple Tree Cove, a saucer-shaped bay on the west shore of Puget Sound which has a small lagoon at its apex with a narrow spit of land sticking out like a finger separating the lagoon and the bay proper.

The four lots owned by defendants which are the subject of this action are on this spit, lying north and east of a county road which crosses the spit. The road crosses the channel connecting the bay and the lagoon over a bridge located a few feet northwest of the northwest corner of defendants' property.

Defendants' four lots have tidelands in front of them, over which the tide ebbs and flows for a distance of several hundred feet. Prior to this suit defendants constructed a fill level with the county road and extending across their upland property and out over a portion of the tidelands

abutting thereon. The fill was approximately 55 to 65 feet wide and extended approximately 30 to 40 feet onto the tidelands.

Plaintiffs filed their complaint seeking injunctive relief after defendant Ed Arness had been arrested by county officials on a charge of violating the county zoning ordinance. He was tried in the justice court, where a jury acquitted him of the criminal charge.

Plaintiffs' complaint in this case alleged that they were the owners of certain lots fronting on Apple Tree Cove and that all of the lots involved in this case—the plaintiffs' and defendants'—were zoned as residential property, and that defendants were violating the county zoning ordinance by maintaining and operating a log dumping and booming grounds on their four lots.

In their first cause of action, plaintiffs prayed for a permanent injunction restraining defendants from using the lots for log dumping or booming on the theory that such a use was in violation of the zoning ordinance. In a second cause of action, plaintiffs sought to enjoin the log dumping and booming operation of defendants on the theory that it constituted a nuisance which threatened plaintiffs' peaceful enjoyment of their property.

Defendants' answer denied all the material allegations of plaintiffs' complaint and affirmatively alleged that the four lots in dispute had been used primarily for logging purposes for many years and were being so used when the zoning ordinance was enacted in 1945. Defendants also alleged that the lands they were using for log dumping and booming were in an unclassified zone and not in a residential zone, and alleged that defendants had no other place to put their logs into the tidewaters, and that to deny them the use of their lands for log dumping and booming would be to deprive them of the use of their property without due process of law in violation of the state and Federal constitutions.

After a trial of the case on the merits, the trial court rendered a memorandum opinion holding that the use of the property by defendants as a log dumping and booming

grounds was in violation of the county zoning ordinance. The court on May 25, 1953, entered a decree enjoining defendants' use of the lots for log dumping or booming from and after May 1, 1954. The decree made no provision for payment of costs to plaintiffs. On the day the decree was entered, defendants gave written notice of appeal.

Three days later, on May 28, 1953, plaintiffs filed a cost bill. Defendants moved to strike the cost bill. The motion was denied. On June 22, 1953, the trial court entered an order amending the decree to allow plaintiffs their costs. Defendants have appealed from the decree and from the order amending it.

Appellants have made six assignments of error, the first five challenging certain portions of the findings of fact made by the court and the failure to make certain findings. The sixth assignment asserts that the court erred in refusing to strike the cost bill and in amending the decree (after notice of appeal had been given) so as to award costs to respondents.

Respondents produced some twenty witnesses, most of whom were owners of property situated in the vicinity of appellants' land. These witnesses testified regarding the adverse effect of appellants' log dumping and booming operations upon their enjoyment of their respective properties and the consequent depreciation of its value. Appellants' witnesses gave testimony in contradiction thereof.

In view of the narrow ground on which the trial court decided this case (as shown by its memorandum decision), we need not discuss the conflicting testimony bearing upon the general nuisance issue. This issue is no longer in the case, because (1) the parties stipulated in open court that *the manner* in which appellants' operations were conducted did not differ from similar log dumping and booming operations, and (2) the trial court stated that it was unable to hold that the log dump constituted a general nuisance.

Consequently, the only question before us is raised in appellants' assignment of error No. 4, reading as follows:

"Trial Court erred in holding in Paragraph IV of its Findings of Fact 'that the acts and things done by the defendants

were in violation of Ordinance No. Z-1, and therefore unlawful, and a public nuisance.' "

■ Even though it is called a finding in the record, this statement is a conclusion of law rather than a finding of fact. In such cases, it is our policy to treat such a statement as a conclusion of law. *Wygal v. Kilwein,* 41 Wn. (2d) 281, 248 P. (2d) 893.

We therefore come to a consideration of three undisputed facts shown in the record which we regard as material to a determination of this case.

Those three facts are: (1) The tidelands below the government meander line in Apple Tree Cove are unclassified by the county zoning ordinance. (2) The zoning ordinance does not prohibit log dumping and booming in unclassified zones. (3) The filled portion of appellants' land on which their truck stands when dumping logs is wholly below the meander line, and therefore the operation takes place entirely on the tidelands.

It is not disputed, of course, that the logs are boomed in the water over the tidelands well below the meander line, and that appellants obtained a permit from the Army engineers to obstruct navigation to the extent necessary for their booming operations.

The first and second facts recited above were established by the county zoning ordinance and the economic land use classification map approved by the county commissioners.

The third fact was established by the testimony of Olin M. Sprague, a surveyor whose qualifications were admitted by respondents, and by a map drawn by him from information obtained by a survey of appellants' four lots and the tidelands adjoining them. According to Sprague's testimony (which was not disputed by any other witness), that portion of appellants' land on which their logging truck stands while dumping logs is wholly below the meander line and entirely on the tidelands.

The court found that appellants' lots were zoned as agricultural land in 1945 and rezoned as residential land in 1951. Appellant contends the rezoning was not properly accom-

plished. But since by terms of the ordinance log dumping and booming are prohibited in either agricultural or residential zones, we need not pass on this assignment of error, because, if there were error in so finding, it would not affect the result.

The problem before us is whether appellants may, without violating the county zoning ordinance, drive their logging truck across their own land from the county road to the tidelands in front thereof for the purpose of dumping logs thereon.

In order to understand the physical facts, we again refer to the testimony of Mr. Sprague, the surveyor (since his is the only testimony on that point), and to his map of the area. We find that the upland portion of appellants' four lots (above the meander line) is a wedge-shaped strip of land lying between the county road right of way and the tidelands. The upland strip is 17.49 feet wide at the northwest end of the fill and 28.92 feet wide at the southeast end of the fill. The part of the fill below the meander line (which is on the tidelands) is 40.09 feet wide at the northwest end of the fill and 28.69 feet wide at the southeast end. The outer edge of the fill is 175.62 feet long, and the log rollway extends 90 feet easterly from the outer edge of the fill.

It is evident that to drive their truck from the county road to the site from which the logs are dumped onto the rollway, appellants must cross a strip of their own upland varying in width from 17½ to 29 feet. In other words, appellants' truck, in order to reach the unclassified zone where its load may be dumped legally, must cross this narrow strip of their own land on which log dumping and booming are not permitted by the zoning ordinance.

Appellants contend that nothing in the zoning ordinance prohibits a loaded logging truck from crossing private property in a restricted zone in which it cannot dump its load to reach an unrestricted zone where it can dump its load. Respondents, on the other hand, assert that the zoning ordinance prohibits appellants from using the restricted upland

portion of their own property as an approach to the unclassified log dump area.

Neither appellants nor respondents have cited any case from this or any other jurisdiction which assists us in solving this problem.

Respondents have cited two cases which, they contend, hold that:

". . . the more stringent regulations of a classified area should be applied to the contiguous area which is unclassified, else, as in the present case, the property owner will attempt to do outside the area what he cannot do within the area and in order to do so will subordinate the classified area to the demands of the unclassified area."

This is a novel contention, but as we read the cited cases they do not support respondents' position. These cases are *Fourteenth Street Warehouse Corp. v. Murdock,* 163 Misc. 399, 297 N.Y.S. 420, and *People ex rel. Smith v. Walsh,* 211 App. Div. 205, 207 N.Y.S. 324 (affirmed 240 N.Y. 606, 148 N. E. 724).

In *Fourteenth Street Warehouse Corp. v. Murdock, supra,* New York city's building zone resolution was held to prohibit the use of a building as a garage for more than five cars within the same block as a school. There was no entrance or exit from the garage to the street on which the school was located, and there was an entrance and exit on a street where such a garage would be permitted.

In that case, the cars entering the garage would come through an *unclassified* zone and into a *classified* zone when they entered the part of the garage adjacent to the street on which the school was located. In other words, that part of the garage located on the street adjacent to the school was in an area classified to prohibit any garage from being operated there. The fact that the entrance was through an area where a garage would be permitted is immaterial. In the instant case, the situation is reversed, because appellants' truck passes through a *classified* zone to reach an *unclassified* zone where it has a right to dump its load of logs. Therefore, the *Fourteenth Street* case cannot be considered as applicable to our problem.

Furthermore, in the *Fourteenth Street* case, the court based its decision primarily on the fact that the zoning ordinance was intended to protect school children from the hazard of having a commercial garage nearby. No such consideration is involved here.

In *People ex rel. Smith v. Walsh, supra* (the second case relied upon by respondents), the owner of the land sought a special permit to establish a garage for more than five cars, the garage fronting on streets A and B. Under the zoning ordinance, a garage would be permitted on street A but prohibited on street B. The court held that, even though no entrance be constructed on street B, the garage would be prohibited. However, though the respondents did not mention it, a permit for the erection of the garage was granted under another section of the zoning ordinance because "practical difficulties and unnecessary hardships" were held to prevent the carrying out of the strict letter of the ordinance.

In the cited case, the actual use to which the part of the building next to the classified street was to be put was as a *garage*, which was the very use prohibited by the ordinance. If these two cases hold anything which has any bearing upon this case, it is only the proposition that it is the *use to which a piece of property in a classified zone is put* that determines whether or not there is a violation of the zoning ordinance, and not the manner in which the property being used is entered or approached.

Neither case respondents cite is authority for prohibiting a truck from crossing land zoned as agricultural (or as residential) to reach land zoned as unclassified.

Our own search has produced only one case which involved somewhat similar facts. That case is *Rolling Green Golf Club Case*, 374 Pa. 450, 97 A. (2d) 523, decided by the supreme court of Pennsylvania June 26, 1953. This decision was rendered subsequent to the trial of the present case and was not available to counsel or the trial court.

In that case, a golf club located in a residential zone purchased a tract of land (also zoned as residential) between its

parking lot and a public road. The golf club applied to the board of adjustment (which handled administration of the zoning ordinance) for a special permit to construct a private roadway on this tract twenty feet wide running from the parking lot to the road. The board denied the permit. The golf club appealed to the court of common pleas, which ordered the permit granted. The board of adjustment and certain property owners who had intervened in the case appealed to the Pennsylvania supreme court.

That court, in affirming the trial court, said:

"The right of a property owner to have (or build) a road over his own land to connect with a public road has been recognized for centuries as one of his fundamental inalienable rights. The right of ingress and egress has always been considered such an important right that the law from very early time even gave a neighbor a way of necessity *over the property of another!* . . .

"Did the present ordinance—which must be strictly construed where it is in derogation of fundamental or common law rights—prohibit this property owner from using part of its land for a driveway? It certainly does not say so either expressly or by clear and necessary implication and therefore it is clear that it did not intend to attempt to deprive a landowner of this important ancient fundamental right."

In that case, the golf club already had access to another public road from its property and was seeking permission to construct the new private roadway over residential property as a matter of convenience. In the case at bar, appellants, if denied the right to use their zoned property as a roadway, will be deprived completely of their legitimate use of their unclassified tidelands.

In this case, as in the golf club case, the zoning ordinance does not expressly prohibit the use of the upland property for a driveway for a logging truck whether appellants' lots be considered classified as residential or agricultural.

The remaining question is whether the zoning ordinance *by clear and necessary implication* prohibits the driving of a logging truck across private property zoned either as

residential or agricultural as a means of access to abutting property.

There is one extremely cogent reason for not interpreting this zoning ordinance as impliedly prohibiting the driving of a logging truck across lands classified as agricultural or residential. That is that such an interpretation would raise serious questions as to the constitutionality of the ordinance.

■ As was said by the United States supreme court in *Washington ex rel. Seattle Title Trust Co. v. Roberge*, 278 U. S. 116, 73 L. Ed. 210, 49 S. Ct. 50, 86 A. L. R. 654 (reversing this court's decision, 144 Wash. 74), concerning zoning ordinances:

"Zoning measures must find their justification in the police power exerted in the interest of the public. *Euclid v. Ambler Realty Co., supra,* 387 [272 U.S. 365]. 'The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use, is not unlimited and, other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals, or general welfare.' *Nectow v. Cambridge, supra,* p. 188 [277 U.S. 183]. Legislatures may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities."

In the very recent case of *Midland Electric Coal Corp. v. Knox County,* 115 N. E. (2d) (Ill.) 275, the Illinois supreme court reviewed numerous decisions involving the constitutional validity of zoning ordinances and stated the basic principles in this language:

"The applicable rules governing the validity or invalidity of zoning regulations have long been crystallized by numerous decisions in this and other jurisdictions. It is well established that every person has the right to use his property in his own way and for his own purposes, subject only to the restraints necessary to secure the common welfare. [Citing cases.] In the case of *State Bank & Trust Co. v. Village of Wilmette,* 358 Ill. 311, at page 316, 193 N.E. 131, at page 133, 96 A.L.R. 1327, the court said: 'The privilege of every citizen to use his property according to his own will is both a liberty and a property right. Liberty includes not only freedom

from servitude and restraint, but also the right of every man to be free in the use of his powers and faculties to pursue such occupation or business as he may choose and to use his property in his own way and for his own purposes, subject only to the restraint necessary to secure the common welfare.'

"It is likewise equally well established that reasonable restraints on the use of property in the interest of the common good and bearing a real and substantial relation to the public health, safety, morals and general welfare constitute a valid exercise of the police power. [Citing cases.]

"There can be no question as to the rule that where the question of reasonableness is fairly debatable the courts will not interfere with the legislative judgment and will not substitute their judgment for that of the legislative department, as established in the *County of Du Page* case [402 Ill. 179] and other cases cited by defendant. However, such principle of law does not foreclose the courts from exercising their judicial function and, as stated in the *Forbes* case [348 Ill. 166], the reasonableness and propriety of a zoning regulation and its application must be decided by the court from the facts and circumstances in evidence.

"Zoning ordinances, to be a valid exercise of the police power, must have a real and substantial relation to the promotion of the public health, safety, morals or welfare. [Citing cases.]

"As stated in *People ex rel. Kirby v. City of Rockford,* 363 Ill. 531, 2 N.E. 2d 842, where there is no material relation of the restrictive ordinance to the public good, such ordinance cannot under the guise of a zoning regulation, either confiscate the property or inflict a substantial financial injury upon the owner thereof.

"Mr. Justice Fulton, in the *Pioneer Savings Bank* case, stated the substance of the rule in the following language [408 Ill. 458, 97 N.E. 2d 305]: 'One of the controlling questions for us to determine is whether or not the invasion of the property rights under the purported police power is unreasonable and confiscatory, and, in so determining, we must consider the extent to which property values are diminished by the provisions of the zoning ordinance, and we must give due consideration to testimony in that regard. . . . If the gain to the public by the ordinance is small when compared with the hardship imposed upon the individual property owner by the restrictions of the zoning ordinance, no valid basis for the exercise of police power exists.'

Zoning laws that result in relatively little gain or benefit to the public while inflicting serious injury or loss on the property owner have always been held by this court to be confiscatory and void. *People ex rel. Kirby v. City of Rockford,* 363 Ill. 531, 536, 2 N.E. 2d 842."

The present case involves only appellants' activities in operating their logging truck to transport logs across their upland property. Their activities in dumping and booming their logs on their tidelands are not in any way affected by this zoning ordinance. Consequently, in order for this court to hold that the ordinance prohibits appellants from driving their truck across their upland property, we would have to find that their conduct *in driving across the zoned area* bears a "substantial relation to the public health, safety, morals or general welfare." *Washington ex rel. Seattle Title Trust Co. v. Roberge, supra.*

The logging business is a lawful business which, under ordinary circumstances, does not create a nuisance. In this case, the question of whether appellants' activities constituted a general nuisance (in the absence of any violation of the zoning ordinance) was eliminated by the trial court. Furthermore, the evidence shows that, to conduct their business profitably, independent loggers must have some means of access to tidewater in order to compete with others in the sale of their product on an open market.

If we are compelled to interpret this ordinance as respondents urge us to do, to wit, as meaning that a logger may not drive his logging truck across his own land in an agricultural or residential area, we cannot avoid passing upon its constitutionality in the light of the legal principles quoted above. Thus, we would be confronted with serious constitutional questions, which may be avoided by giving the language of the ordinance its ordinary meaning.

Therefore, following the rule which this court has previously enunciated in such situations, we adopt that interpretation of this ordinance which avoids the necessity of passing upon these constitutional questions. *Soundview Pulp Co. v. Taylor,* 21 Wn. (2d) 261, 150 P. (2d) 839. We accordingly hold that this ordinance does not by necessary

implication forbid the driving of a logging truck across private property zoned either as agricultural or residential.

In reaching that conclusion, we follow what we consider the correct rule of interpretation of zoning ordinances which was laid down by the Maryland Court of Appeals in *Landay v. MacWilliams,* 173 Md. 460, 196 Atl. 293, 114 A. L. R. 984, in which case the court said:

"Such [zoning] ordinances are in derogation of the common law right to so use private property as to realize its highest utility, and while they should be liberally construed to accomplish their plain purpose and intent, *they should not be extended by implication to cases not clearly within the scope of the purpose and intent manifest in their language.*" (Italics ours.)

The trial court's injunction was based on its belief, expressed in the memorandum opinion, that appellants' four lots and the tidelands abutting thereon were being used as one unit for the purpose of operating a log dump.

The memorandum opinion said:

"Regardless of where the meander line goes . . . , these four lots are used as a part of and in conjunction with the fill portion of the tide lands for the purpose of operating this log dump. It is impossible to separate one from the other, and it violates, in my opinion, the entire wording and spirit of the zoning ordinance."

However, as we have heretofore pointed out in this opinion, it is necessary to consider separately appellants' activities on the tidelands and those on the uplands. Since the ordinance does not purport to prohibit the use of the tidelands for log dumping, and since we have held that the ordinance cannot be interpreted as prohibiting the driving of a logging truck across the zoned uplands, the trial court erred in concluding that the whole of appellants' lots and tidelands must be considered as one unit, all of which was being used for log dumping and booming. Consequently, we must hold that appellants did not violate the zoning ordinance in any respect.

Because the injunction was based on an erroneous conclu-

sion of law, the decree must be reversed, with instructions to dismiss the action.

We make no ruling on appellants' appeal from the order purporting to amend the decree to allow respondents their costs, as the reversal of the principal decree necessarily carries with it a reversal of the judgment for costs in the trial court.

It is so ordered.

GRADY, C. J., SCHWELLENBACH, HILL, and WEAVER, JJ., concur.