[No. 1782–2. Division Two. May 11, 1977.]

MAYER BUILT HOMES, INC., *Appellant,* v. THE TOWN
OF STEILACOOM, ET AL, *Respondents.*

*Norman L. Martin,* for appellant.

*Edwin Wheeler* and *Hutchins, Plumb & Wheeler,* for respondents.

REED, J.—Mayer Built Homes, Inc. (Mayer) appeals from a superior court dismissal of petitions (1) seeking review of the Town of Steilacoom's adoption of a new zoning classification encompassing property owned by Mayer, and (2) seeking to compel the town to issue a permit for construction of an apartment on the property. On appeal, Mayer contends that the town acted arbitrarily and capriciously in rezoning the subject property and that the act so reduced its value as to amount to an unconstitutional confiscation. In addition, Mayer challenges the legality of an ordinance passed prior to the new zoning enactment, which removed from the zoning district certain uses then applicable to the property. We affirm for the reasons set forth below.

In 1962 the Town of Steilacoom adopted a comprehensive plan for its future growth. It established various zoning classifications and assigned most of the property within the corporate limits to a "low density residential" classification, the most restrictive then available. In 1963 Mayer acquired two parcels so classified. These lay unimproved until 1967, when both were rezoned "retail," a class which allowed certain commercial uses and apartment houses. Mayer then built an apartment house on the larger of its two parcels, property not at issue herein. The smaller parcel, the subject of this appeal, remained unimproved without any building permits having been sought for it. Then on June 12, 1973, the Town adopted ordinance No. 475, which in part prohibited the construction of any "duplex or multi-family dwelling" in the retail use district in which the parcel lay. Mayer did not challenge this ordinance at the time.

Early in 1974, the town planner petitioned for adoption of ordinance No. 496, which was designed to set up a new zoning classification of "neighborhood commercial" to allow areas of transition between existing commercial uses of property and the residential neighborhoods that had grown

up nearby. Among the uses allowed in a neighborhood commercial zone are single–family homes and duplexes, professional and business offices, public and semi–public uses, barber and beauty shops, travel bureaus, and "specialty stores" dealing in antiques, books, food, flowers, gifts, jewelry and photography. Designed to reduce the ordinary commercial impact of these uses were such features as restrictions on building height and sign size, a requirement for side yards, a limitation on number of employees, and a requirement for advance approval of proposed building plans. Mayer's property was among those sites subject to rezone under this ordinance.

The matter went first before the town planning commission in a public hearing on February 11, 1974, attended by Mayer's president and several people living near Mayer's property. The town planner, Dennis Clarke, explained that the proposed creation of a new zoning classification was to satisfy the policy of the comprehensive plan, *i.e.,* that compatible land uses should be combined and separated from noncompatible uses by buffer strips, transitional uses, and other, similar devices. As things then existed, there was no way to buffer residential areas from the noise, traffic and other characteristics of retail use. After hearing comments from members of the audience, many of whom were concerned about the adverse effect retail use would have on their nearby homes, the planning commission unanimously recommended adoption of the new classification and assignment to it of four parcels, including Mayer's. On May 7, 1974, the town council conducted a public hearing to consider adoption of the neighborhood commercial zoning ordinance. The council heard Mayer's position and those of the town planner and objecting neighbors of the property. Mayer submitted two reports on the financial effect the rezone would have on its property. An appraiser opined that the highest and best use of the property was for apartments, in which case it was worth $12,000; this he contrasted with a value of $5,500 under neighborhood commercial usage. A real estate broker valued the property at

$8,500 to $10,500 as "retail" versus $4,500 to $7,500 under proposed neighborhood commercial usage. He agreed that multi–family residential development was the highest and best use, but seemed to assume that such usage was still permitted in the retail district. The council continued the meeting to allow study of the reports, and upon reconvening on May 21, 1974, it affirmed assignment of Mayer's property into the neighborhood commercial classification.

 We consider first Mayer's argument that the town council's rezoning of his property must be voided due to its arbitrary and capricious nature. A zoning act is subject to judicial review only for manifest abuse of discretion. The party asserting that a legislative authority has abused its discretion by acting arbitrarily and capriciously, *i.e.*, without consideration and in disregard of the facts, has the burden of proof; if the zoning classification is fairly debatable, it will be sustained. *State ex rel. Myhre v. Spokane*, 70 Wn.2d 207, 210, 422 P.2d 790 (1967). A municipality's zoning action should be reviewed with the following approach in mind, as adopted in *Carlson v. Bellevue*, 73 Wn.2d 41, 51, 435 P.2d 957 (1968):

> In determining whether or not a zoning ordinance is reasonable in its application to a given parcel of land, among the factors to be taken into consideration are the character of the neighborhood, existing uses and zoning of nearby property, the amount by which property values are decreased, the extent to which the diminution of values promotes the public health, safety, morals or welfare, the relative gain to the public as compared with the hardship imposed upon the individual owner, the suitability of the subject property for the purpose for which it is zoned, and the length of time the property has remained unimproved, considered in the context of the land development in the area. No single factor is controlling but each must receive due consideration. But to sustain an attack upon the validity of a zoning ordinance, an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions on his property

preclude its use for any purpose to which it is reasonably adapted. He is required to show that there is no possibility for profitable use under the restrictions of the ordinance, or alternatively that the greater part of the value of the property is destroyed by it, although there may be some slight use remaining. Adaptability, it has been declared, envisages economic as well as functional use, and assumes not the most profitable use, but that some permitted use can be profitable.

(Footnotes omitted.) 8 E. McQuillin, *Municipal Corporations* § 25.45, at 111 (3d ed. rev. 1976).

We agree with the trial court that Mayer failed in its burden of proving the ordinance was adopted arbitrarily and capriciously. Mayer relies heavily on the opinions as to reduction in value presented to the council, which allegedly demonstrate that the rezone would preclude use of the property for "any useful purpose to which it is reasonably adapted." There are, however, certain deficiencies associated with reliance on the opinion letters. Neither letter compared the property's value if used for purposes allowed under neighborhood commercial zoning with uses permitted under the current retail classification. Instead, both worked from the premise that the highest and best use would be for apartments, and compared that value of the property with its value if zoned neighborhood commercial; this approach ignored the fact that apartments were no longer permitted under the retail classification, and that the council was being asked to consider an alleged devaluation of the property if changed from uses permitted under "retail" to those possible under "neighborhood commercial." In addition, neither letter explained the method of valuation employed in arriving at the stated figures, and one author expressly disclaimed any status as a competent appraiser.

The trial court characterized the case in support of a rezone as "skinny." It consisted primarily of the town planner's dissertations on a purpose of the comprehensive plan to impose buffer zones between commercial and residential activities, the progression of the area to a residential neighborhood, the projected future for the roads

intersecting the property, and the need to control traffic and noise in the area. In addition, we have already noted that many neighbors voiced their fears that permitting retail uses would bring more people into the area, with attendant traffic congestion and noise; many, in fact, favored a rezone of the site to a purely residential classification, without even the sedate business activities contemplated under "neighborhood commercial." The town council proceedings of necessity followed an informal format, lacking the niceties of courtroom evidentiary procedures so that the interested citizens could express their views. The zoning decision, therefore, was based on opinion and speculation as to the future of the area and the need to establish the subject property as a transitional area according to the comprehensive plan. With the trial court, we agree it would have been preferable for the town council to have based its decision on a more factual basis. We believe, nevertheless, that the zoning ordinance has support in the record and is not a *"wilful and unreasoning action, in disregard of facts and circumstances." Northern Pac. Transp. Co. v. Washington Utils. & Transp. Comm'n,* 69 Wn.2d 472, 478, 418 P.2d 735 (1966). Where there is room for two opinions, a zoning action is not arbitrary and capricious when exercised honestly and upon due consideration, even though a different conclusion might have been reached. *Bishop v. Houghton,* 69 Wn.2d 786, 420 P.2d 368 (1966).

We turn next to the allegedly confiscatory application of the zoning ordinance to Mayer's property. Mayer relies upon *Hauser v. Arness,* 44 Wn.2d 358, 267 P.2d 691 (1954), which contains language supportive of property rights, such as the following at page 369:

Zoning laws that result in relatively little gain or benefit to the public while inflicting serious injury or loss on the property owner have always been held by this court to be confiscatory and void.

Mayer argues that the opinion letters show a severe reduction in value, that the public would gain little from the rezone, and that the action amounts to a confiscation.

We have noted the failure of the opinion letters to competently demonstrate that the rezone from "retail" to "neighborhood commercial" would diminish the property's value. While we agree there must be some benefit to the public before a zoning decision will be allowed to diminish the value of property, here the public in the form of many area residents, argued that they would be benefited by the uses permitted under a rezone and, indeed, would prefer even greater restrictions. Moreover, the opinion letters of Mayer's appraisers spoke of a reduction in value of approximately one–half, but there was no evidence the property could not be put to a profitable use, as required by *Carlson v. Bellevue, supra.* By way of comparison, in *Carlson* the court upheld a rezone that allegedly reduced the value of the property from $60,000 to $2,500. It is with poor grace that Mayer complains of a reduction in value when it acquired the property at a time when it was zoned more restrictively than "neighborhood commercial," then obtained an apparently greater valuation due to a 1967 change but chose not to build as then permitted, and now begrudges the town's attempt to fall back to an intermediate zoning position. In any event, Mayer has not borne its burden of showing such a diminution in value as to amount to a confiscation. *See* 1 R. Anderson, *American Law of Zoning* § 3.25 (2d ed. 1976).

Finally we address the challenges to ordinance No. 475, *i.e.*, that it is an example of illegal "interim zoning" and that it should be applied to parcels zoned "retail" only after the effective date of the ordinance.

Interim zoning describes a process whereby a governmental body in response to an emergency situation temporarily establishes an ordinance to classify or regulate uses of land pending either revision of the existing zoning code or adoption of a final, comprehensive zoning plan. 1 A. Rathkopf, *The Law of Zoning and Planning* § 11.01 (4th ed. 1975); *Smith v. Skagit County,* 75 Wn.2d 715, 453 P.2d 832 (1969); *see* RCW 36.70.790.

Section 1 of ordinance No. 475 provides:

The intent of this ordinance is to establish certain interim zoning modifications in the zoning code of the Town pending the adoption of a new comprehensive plan and new zoning ordinance, and to prohibit development of a nature which appears contrary to the intent of the present comprehensive plan and the general welfare of the citizens of the Town.

Despite the use of the word "interim" in the above section, we do not believe that it is in fact an interim zoning ordinance. There is no reference to any emergency situation, nor is there any indication in the ordinance or elsewhere in the record that the Town deviated from the regular notice and hearing procedures specified in RCW 35.63.100 *et seq.* Ordinance No. 475 in fact makes several substantive changes in the zoning code. It reclassifies several tracts of land, eliminates two use districts, amends the comprehensive plan, and, as pertinent here, redefines the retail use district so as to prohibit the construction of duplexes and multi–family units. These zoning changes, being permanent to the extent any zoning ordinance is permanent until modified or replaced by a later one, are sustainable as an attempt "to prohibit development . . . contrary to the intent of the *present* comprehensive plan." (Italics ours.) We cannot agree with Mayer's contention that the ordinance is an example of interim zoning which must fall because it fails to declare a termination date and was not passed as an emergency measure. That it does not contain those elements is further evidence that the Town simply enacted changes in its existing zoning laws to effectuate the purposes of its then existing comprehensive plan; such an ordinance was within the Town's authority. *McNaughton v. Boeing,* 68 Wn.2d 659, 414 P.2d 778 (1966).

■ The rule on retroactivity of zoning changes is that *application* for a building permit vests in the applicant the right to use his property as then permitted, and that a subsequent change of zone cannot divest him of that right. *State ex rel. Ogden v. Bellevue,* 45 Wn.2d 492, 275 P.2d

899 (1954). Mayer had not, however, applied for a permit to build a structure on its property within the uses permitted under the retail classification prior to adoption of ordinance No. 475. The ordinance, on its face, limits the uses for property in the then existing retail use district. Once the ordinance disallowed certain uses within the retail district, Mayer's property was subject to the reduced usages possible, no other use having vested.

Although not explicitly argued, Mayer's challenge to the retroactivity of the Town's zoning changes is subject to another interpretation. Ordinance No. 475 forbade the construction of multi–family dwellings on Mayer's property, having eliminated that use from the retail district. The effect was to prevent such construction until passage of ordinance No. 496, so that it would have been futile for Mayer to have applied for a permit to build a multi–family structure after adoption of ordinance No. 475. Given that fact, Mayer's argument can be interpreted to be that, if ordinance No. 475 is invalid, then the result must be that Mayer would have been entitled to obtain a multi–family permit up until passage of ordinance No. 496, which could not lawfully relate back to the passage of an earlier, invalid ordinance so as to prevent the construction of multi–family dwellings prior to ordinance No. 496. In sum, if ordinance No. 496 validly prohibits multi–family dwellings on Mayer's property, it does so only as of its own effective date, and invalidation of ordinance No. 475 would, until that date, leave Mayer where it was before adoption of ordinance No. 475, namely, able to build a multi–family dwelling as then permitted in "retail." This argument, however, is premised on the invalidity of ordinance No. 475. With that ordinance having been upheld, the argument falls.

The judgment is affirmed.

PETRIE, C.J., and RINGOLD, J. Pro Tem., concur.

Petition for rehearing denied June 15, 1977.

Review denied by Supreme Court November 18, 1977.